HARVEY MAXWELL ET AL. v. BASTROP MANUFACTURING COMPANY.

No. 6243.

**Statute Construed — Burden of Proof — Legislative Grant.** — The Act of December 15, 1863, provided for the grant by the State of one section of three hundred and twenty acres of land for every $1000 worth of machinery erected and put in efficient operation by any person, company, or corporation by the first day of March, 1865, in accordance with the provisions of that act. The law required that the machinery should be new and efficient. The Governor of Texas on the 19th of November, 1872, appointed R. F. Campbell to take an inventory of the property of the Bastrop Manufacturing Company, and acting under the provisions of the law above referred to, to report in writing his actions regarding the same. It was not shown that the company appointed a commissioner under the law. The report of the commissioners did not disclose whether the machinery had been erected under the law, or by whom. The report was made to the Governor instead of to the Commissioner of the Land Office, as contemplated by the law. The company, in December, 1873, filed with the surveyor its designation and application for survey of lands under the Act of 1863. In a suit between the company and parties claiming the land as pre-emptors, *held:*

1. The machinery which was required to be erected and put in successful operation to entitle a claimant to the benefit of the act must have been "new and efficient machinery," and the erection of second hand machinery which had been worn or defaced did not entitle the owner to the benefit of the act.

2. The right to land resulting from the erection of machinery under the terms of the law, by a third party, did not pass as an incident of sale of machinery to the corporation.

3. In the absence of evidence that the company appointed a commissioner, or that the commissioner of the company and the State's commissioner appointed a third to take and make an appraisement and inventory of the machinery, or that a report was made to the Commissioner of the General Land Office, the company could acquire no right to land.

4. The Act of December 15, 1863, did not authorize the Governor to decide who had done acts which entitled him to the benefits of the law, and a claimant of its benefits could not be relieved by any act of the Governor from the burden of proving the existence of the facts that conferred the right.

5. Even if the commissioners had been regularly appointed, their report did not relieve a claimant of the benefits of the act from the necessity of proving that the claimant was entitled to land, and therefore had the right to appoint one of the commissioners.

APPEAL from Lampasas.   Tried below before Hon. W. A. Blackburn. The opinion sufficiently states the case.

*Clark & Dyer* and *J. H. McLeary*, for appellants.—1.   The report of valuation should have been excluded from the evidence because it shows on its face that there was no appointment of the third commissioner. Acts 10th Leg., sec. 2, p. 3.

2.   The court erred in admitting in evidence, over defendant's objections, the certified copy from the General Land Office of a copy of Governor E. J. Davis' letter appointing R. F. Campbell to return inventory of property claimed by plaintiff.

3.   The so called appointment was in reality only a letter written by Governor Davis to R. F. Campbell, and addressed to him at Bastrop, Texas.   It had none of the elements of a commission in any sense of the term.   Rev. Stats., art. 2253; Const. 1869, art. 4, secs. 17, 18.

4.   The application and designation was inadmissible in evidence, because it was not made by any person authorized to make it.   2 Whart. Ev., sec. 1183, and authorities.

5.   The evidence shows no legal appointment of appraisers, and the inventory and appraisement made by the self-constituted appraisers was not of the plaintiff's property.

6.   There having been no legal appraisement, on account of no one being authorized to act for the State in making such appraisement, the title of the plaintiff to the lands was fatally defective.

7.   So much of the acts of 1863 and 1864 as granted bounties to encourage the manufacture or production of fire arms, nitre, sulphur, and powder were manifestly in aid of rebellion and therefore void; and the bounties of these acts being indivisible and embracing manufactures lawful and unlawful, the whole legislation must be stamped with invalidity. Tel. Co. v. The State, 62 Texas, 630; Const. U. S., art. 14; Ordinance No. 2, Convention 1866; Const. 1870, art. 12, secs. 33, 34; Texas v. White, 7 Wall., 700; United States v. Ins. Co., 22 Wall., 99.

*Joseph D. Sayers, A. S. Fisher*, and *John C. Townes*, for appellee. — 1.   The second section of the act under consideration provides that after the Governor has been notified of the erection of machinery of the specified kind and is satisfied as to the facts, he and the owner of the property shall each appoint a commissioner to act in appraising same, and these two shall appoint a third party to act with them.   The Governor and the manufacturing company each appointed a commissioner, and these two acted with a third party.   No more conclusive evidence of the latter's appointment and recognition by them could be given.

2.   Under the act offering the bounty the Governor is made sole judge as to whether the party applying therefor has erected and introduced the kind of machinery and improvements contemplated by the statute; and his appointment of an appraiser to represent the State is conclusive proof that he was satisfied as to these facts.

3.   The action of the Governor in appointing the appraisers and their action in appraising the property are conclusive against the State; but if not, such action can only be avoided by direct proceeding instituted by the State for that purpose, on the ground of fraud or irregularity.   No third party can avail himself of any irregularity therein, real or supposed.

4.   The intent of this act was to encourage certain industries and to develop the resources of the country.   This was the real legislative purpose.   The method employed was to offer a bounty to persons erecting and putting in operation new and efficient machinery—that is, machinery not previously employed in these works in this State and capable of performing good service.   This purpose was fully met by appellee, the proof showing conclusively that machinery which had never been used had been erected and put into successful operation at Bastrop within the time limited by the law, by the use of which cotton and woolen thread and cloth were manufactured.

5.   It is immaterial whether the machinery was put in operation by Ward, Munger & Co. or by appellee, as appellee succeeded to all the rights and demands of Ward, Munger & Co. in the premises.

STAYTON, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellee to recover lands claimed by appellants through preemptions.

Appellee is a private corporation, incorporated under an act approved November 7, 1864.   Special Laws, 1864, p. 4.   Appellee claims the land under the Act of December 15, 1863, the first and fourth sections of which are as follows:

"1.   Any person, company, or corporation desiring to avail themselves of the benefits of this act shall erect and put into successful operation by the 1st day of March, 1865, new and efficient machinery for the manufacture of iron from ore, or for the manufacture of cotton or wool into thread or cloth, or for the manufacture of fire arms, nitre, sulphur, powder, salt, cotton or woolen cards, and spinning jennies, or paper and oil."

"4.   Any person, company, or corporation hereafter erecting and putting into efficient operation by the 1st day of March, A. D. 1865, any machinery of the character described in the preceding sections of this act shall be entitled to receive from the State a grant at the rate of one section of 320 acres of land for every $1000 worth of machinery so erected and put into efficient operation."   Pasch. Dig., arts. 4433–4439.

Appellee was incorporated "for the purpose of manufacturing cotton and woolen fabrics."

The second and third sections of the act provide for making the appraisement of the property, and so far as necessary will be hereafter set out.   The other sections provide the manner in which those acquiring right under the act may cause this to attach to particular lands.

It is claimed by appellee that it complied with all the requirements of the act, and thus became entitled to the land in controversy. The cause was tried without a jury and judgment rendered for the plaintiff.

It is urged that the act in question in its entirety was in aid of the war between the States, and therefore void under constitutional provisions; but in view of other questions presented we do not deem it necessary to pass on that question.

The record shows that the machinery was bought by Ward, Munger, and Smith, a copartnership, and tends to if it does not conclusively show that the machinery was erected and put in operation by them before the incorporation of appellee; but upon that question the court found "that said machinery was put in operation in the fall or winter of 1864, but whether by Ward, Munger & Co. or plaintiff the proof does not show." The machinery and buildings became the property of the corporation after its incorporation in some manner not shown, and its former owners with others became stockholders, and this seems to have been contemplated when the charter was obtained.

If Ward, Munger & Co. acquired any right to lands, this they never transferred to appellee, unless this right would pass as an incident to the property. Among others the court made the following findings:

"6. That the machinery had been used before it was purchased by either Ward, Munger & Co. or by plaintiff, and was not new when erected and first used in Bastrop County, but was good and efficient second hand machinery, and was successfully operated until about the year 1866, if no longer."

"23. The Bastrop Manufacturing Company did not erect any new machinery or put new machinery in successful operation between the 1st day of March, 1861, and the 1st day of March, 1865, but the machinery operated by it was of the kind and operated in the manner and during the time shown in the fourth, fifth, and sixth findings."

"5. That the principal part of the building in which the machinery was placed was erected several years prior to 1863, possibly between 1851 and 1853, but was suitable for the business."

"21. Ward, Munger & Co. purchased the principal part of the building in which the machinery was erected in the spring or summer of 1863, for the sum of $2000."

The last four findings are fully sustained by the evidence. The first inquiry arising is, Do these findings show facts that entitle Ward, Munger & Co. or appellee to land under the act?

The law required the machinery to be erected and put in successful operation to be "new and efficient."

The court found that no new machiney had been erected and put in operation within the time prescribed, and this would seem to be conclusive of the case, unless the words "new" and "efficient" meant the same.

We have not the conclusions of law found by the court, except as these may be gathered from the general judgment rendered for the plaintiff.

To reach that judgment the court must have found that the words "new" and "efficient" had the same meaning, or that the action of the Governor and appraisers, hereafter to be referred to, was conclusive of the right of appellee.

Efficient machinery means such as is capable of well producing the effect intended to be secured by the use of it for the purpose for which it was made, and this may be done, for a time, as thoroughly by machinery which has been as by that never before used; but efficient machinery would not necessarily be "new machinery."

The word "new," standing alone, would mean recently manufactured or invented, and this would embrace machinery that had been used before it was erected at Bastrop; but if this was the sense in which the word was used in the act, the evidence would not justify the holding that the machinery was new, for it was not shown that the machinery was either recently invented or manufactured.

Looking to the matter to which the word relates, the purpose to be secured, and the fact that the machinery was required to be efficient as well as new, by the words "new machinery" was obviously meant machinery in condition as when first manufactured—not worn or defaced by use in any degree.

The word was evidently used in opposition to the words "old" or "second hand," and in the sixth finding the judge who tried the cause clearly recognized that this was the sense in which the word was used.

By "second hand" machinery is meant such as has been previously used by another person.

Many illustrations of the use of the word "new" readily suggest themselves. If the purpose had been only to require good or serviceable machinery, the requirement that the machinery should be efficient would have been sufficient.

The intent of the Legislature evidently was to require machinery which had not been before used, and thus rendered in a degree less durable or valuable.

We are therefore of opinion that the evidence does not show that either Ward, Munger & Co. or appellee, within the time prescribed, erected new and efficient machinery.

A part of the machinery erected was purchased in England, where it had been used, and part had before been used in the country for other purposes.

The main building was erected and used for other purposes many years before the machinery was placed in it.

If, however, it had been shown that the machinery was both new and efficient, the burden of proving that it was erected and put in successful

operation by appellee, or that after so erected and put in operation by Ward, Munger & Co., they had transferred to appellee their right to land thus acquired, rested upon appellee; for the right to land if acquired by Ward, Munger & Co. would not pass as an incident to the machinery and property with which it was connected.

There was no evidence that Ward, Munger & Co. transferred to appellee any right they may have had to acquire lands.

The court, while finding that the machinery was put in operation in the fall or winter of 1864, expressly declared that the evidence did not show whether this was done by Ward, Munger & Co. or by appellee.

The burden of proof being on appellee this was fatal to its case, unless it had shown that Ward, Munger & Co., after acquiring right to lands, transferred this to appellee. There was neither finding nor evidence to justify a finding that Ward, Munger & Co. transferred any such right to appellee. It is contended, however, that the act of the Governor in appointing an appraiser and of the appraiser in making an appraisement of the property is conclusive of appellee's right to the land.

The second and third sections of the act on which appellee bases its right is as follows: "Upon being notified of the erection and completion of any machinery of the kind described in the foregoing section, and upon being satisfied that said machinery was erected and put in operation within the time prescribed in the first section of this act, it shall be the duty of the Governor and owner or owners of said machinery to appoint each one disinterested person to act as commissioners, who shall appoint a third commissioner to act with them in the valuation of said machinery; said commissioners shall, before making said valuation, take and subscribe the following oath [here form of oath], which, together with their valuation, shall be returned to the General Land Office."

"3. It shall be the duty of said commissioners, after making a minute personal examination of said machinery, and after procuring such other evidence of its value as may be accessible to them, to value the same at its true value in specie. In said valuation the necessary buildings and structures erected for the efficient operation of said machinery shall be included, but the land upon which they are situated shall not be valued." Pasch. Dig., arts. 4434, 4435.

To show the appointment of a commissioner on the part of the State appellee offered a certified copy of a paper as follows:

"Governor's Office, Austin, Texas, November 19, 1872.

"*To R. F. Campbell, Bastrop, Texas:*

"You are hereby appointed agent of the State of Texas under and by virtue of an act of December 15, 1863, to take an inventory of property *said to have been constructed by the Bastrop Manufacturing Company* at the town of Bastrop for manufacturing purposes. You will report to me in writing, properly certified, your actions as regards same; it being under-

stood, however, that you look to said company for compensation for your services under this appointment, and not to the State of Texas.

"Respectfully,

"EDMUND J. DAVIS, Governor."

R. F. Campbell and two other persons made an inventory and appraisement, which was returned to the General Land Office on September 15, 1873, by attorney for appellee, where it, with the affidavits required by the second section, were filed.

A finding of the court was as follows: "22. There is no evidence of plaintiff appointing a commissioner or of plaintiff's and State's commissioners appointing a third one to take an inventory and appraise said property except their report, and that is silent as to the fact or time of appointment."

It is unnecessary to determine whether, if it affirmatively appeared that the Governor had passed on the question confided to him and that the commissioners had been appointed and had acted in strict compliance with the law, their report would have been conclusive of the right of appellee to land.

The fact that the Governor appointed a commissioner for the State, if nothing further appeared, would be strong evidence of the fact that he had made such inquiry as satisfied him that the machinery had been erected and put in operation within the time prescribed by the act; but the commission, if it may be so called, carefully avoided any expression of opinion as to whether the machinery had been erected, or whether if erected this was done by appellee.

It adjudicated no question the Governor was empowered to decide, and required the report to be made to himself instead of to the Commissioner of the General Land Office, as the act seems to have contemplated.

Before the report was filed in the General Land Office the Governor directed the Commissioner not to issue evidences of right to land under the claim, and declared appellee not entitled to lands.

The sole question, however, on which the Governor seems to have been empowered to pass was whether such machinery as was contemplated by the act had been erected and put into operation within the time prescribed by the act.

The act did not empower him to decide who had done this, and thus became entitled to lands; and appellee could not be relieved by the act of the Governor and commissioners, if their acts were in all respects regular, from the burden of proving that it was entitled to lands by reason of the existence of such facts as would confer the right whenever controversy arises as to that fact.

It was also necessary to show that the commissioners were appointed in the manner required by the statute, before their acts could be binding on any person.

The act provided that the owner of the machinery erected should appoint one commissioner, and that he and the one appointed by the Governor should appoint another, and that the three should make and return to the General Land Office an inventory and appraisement.

By "owner or owners of said machinery" was evidently meant the person or persons whose rights were to be affected by the act of the commissioner—the person or persons entitled to receive lands because they had erected machinery in accordance with the terms of the act—and not some person or persons who might acquire title to the machinery after it was erected and put in operation.

If under the facts shown by the record it was made to appear that one of the commissioners was appointed by appellee, and that he and the one appointed by the Governor appointed the third, this would not be sufficient to entitle their report to full faith, unless it was further shown that appellee was entitled to the land, and therefore had the right to appoint a commissioner.

It is unnecessary to inquire whether the steps taken by appellee after the report of the commissioners was filed in the General Land Office were such as would have entitled it to the land in controversy had the right to any land been shown; for without such right being shown it is unimportant what appellee did, in effect, to appropriate any particular land, as is it unnecessary to consider whether the inventory and appraisement did not include items that in no event could enter into the appraisement.

Appellee not having shown any right to the lands, appellants were entitled to a judgment, and the judgment of the court below will be reversed and here rendered in their favor.

*Reversed and rendered.*

Delivered May 9, 1890.