MATHIS EQUIPMENT COMPANY, Appellant,

v.

C. P. ROSSON, Jr., Appellee.

No. 40.

Court of Civil Appeals of Texas.

Corpus Christi.

June 25, 1964.

Rehearing Denied Jan. 14, 1965.

Second Motion for Rehearing Denied Feb. 11, 1965.

Luther Jones, Jr., Corpus Christi, Frederic Johnson, Sinton, for appellant.

John J. Pichinson, Corpus Christi, Wm. E. Nicholas, Joe C. Ternus, John H. Flinn, Sinton, for appellee.

SHARPE, Justice.

This suit was brought by appellant, a corporation, to recover the purchase price of a cotton picking machine sold by it to appellee under a written contract.

The trial court rendered judgment that appellant take nothing, based upon a jury verdict consisting of answers to two special issues. Special issue number one found that the machine in question was not a new machine at the time of its delivery to appellee. Special issue number two found that the machine was not wholly worthless for the purpose of picking cotton.

Appellant asserts four points of error. Point one urges that appellant was entitled to judgment non obstante veredicto for the purchase price of said cotton picking machine based upon facts shown by undisputed evidence and the answer of the jury to special issue number two. Appellant's points two, three and four are directed to the answer of the jury to special issue number one. Point two asserts that said answer is without support in the evidence. Point three asserts that such answer is so against the great weight and preponderance of the evidence as to be manifestly wrong. Point four asserts that the evidence is insufficient to support such finding.

We have concluded that appellant's points one and four should be sustained. The facts conclusively proved and the finding of the jury on special issue number two entitles appellant to judgment for the purchase price of said cotton picking machine in the absence of any defense established by appellee which would authorize rescission or damages as an offset to the said purchase price. The answer of the jury to special issue number one is immaterial to the defense relied upon by appellee in this case, and, in any event, the evidence is insufficient to support the same.

Appellee's defense in this case is limited to alleged failure of consideration giving rise to rescission of the contract. He does not claim fraud, accident or mistake; nor does he claim damages for breach of warranty as an offset to reduce the amount owing on the purchase price. Appellee particularly urges that there was a failure of consideration because he received something other and different from what he ordered in that the cotton picking machine was not "new", since the evidence established that it was manufactured in the month of June, 1961, some fourteen months prior to its delivery to him.

Appellee's evidence shows that on August 3, 1962, he advised an agent of appellant by telephone that he desired to purchase a new Model 420 International Harvester Diesel, two-row, low-drum Cotton Picker. Appellant's agent advised appellee that it did not have a machine on hand meeting such description and that some three or four weeks would be required to obtain one from the factory; that appellant could probably get a high-drum picker of such model if appellee was willing to accept the same. Shortly thereafter, appellant advised appellee that a high-drum picker had been located in the Rio Grande Valley and appellee agreed to buy it. Appellee also instructed appellant to install compression sheets thereon. The machine was delivered to appellee and demonstrated to him on August 11, 1962, prior to the time he signed the contract for same and a separate delivery report showing that he had received the machine, which was described therein by model number and serial number, in satisfactory condition. Appellee requested and was granted an extension of time in which to pay for the machine on the ground that he had not consummated the sale of cotton which he had on hand and was trying to sell at a higher price. Appellee reiterated his promise to pay on several occasions. After several days, the machine started

causing difficulty and appellee then requested that a representative of the manufacturer visit him so that the machine could be repaired and the warranty thereon extended. About fifty bales of cotton were picked with the machine until about August 26, 1962, after which the machine was not used again. In September, 1962, at appellee's request, appellant took the machine to its place of business for repairs. Appellee testified that about the middle of October, 1962, he checked the serial number on the machine, thought it was old, and then advised his foreman to tell appellant he didn't want any part of it.

Appellee does not contend that he specifically ordered a 1962 model machine or one manufactured in the year 1962. While on the witness stand in this case, appellee testified, in substance, that the year 1962 was not mentioned to the agent of appellant when the machine was ordered or thereafter, until he had accepted and used the same.

■ It is well settled in Texas that in the absence of fraud or an agreement allowing the property to be returned to the seller, rescission for breach of warranty can be availed of by the purchaser only where the identity of the article is involved and it proves to be something other than that which was purchased or if such article is wholly worthless for the purpose for which it was sold. Wright v. Davenport, 44 Tex. 164, 167 (1875);[1] Dillard v. Clutter, 145 S.W.2d 632 (Tex.Civ.App., 1940, writ ref.); Bedner v. Dunigan Tool & Supply Company, 142 Tex. 663, 180 S.W.

2d 919 (1944); 77 C.J.S. Sales § 100, pages 796-797; 37A Tex.Jur., Sales § 352, page 731.

■■ In this case appellee does not rely upon fraud or an agreement to return the property involved in the sale and the jury has found that the machine in question was not wholly worthless for the purpose of picking cotton. The evidence does not establish or raise an issue that appellee received something different from what he ordered by description, but, on the other hand, conclusively shows that the specific item of personal property described in the written contract and delivery report was demonstrated to and delivered to appellee prior to the time he executed the said instruments. Since it is established that a specifically identified article of personal property was appropriated to the contract by the parties and that appellee accepted same, the title to said machine passed to appellee and the contract became executed. Farmers' Rice Milling Co. v. Standard Rice Co., 276 S.W. 904, 905 (Tex.Comm.App., 1925); Hill v. Childers, 268 S.W.2d 203, 205 (Tex.Civ.App., 1954, writ ref. n. r. e.). The requirement that the machine be new, whatever it was before, then became, at most, a warranty which guaranteed that the machine which had been appropriated to the contract by the parties possessed the quality of newness. El Paso & S. W. R. Co. v. Eichel & Weikel, 130 S.W. 922, 936 (Tex.Civ.App., 1910, writ ref.); Eastern Seed Co. v. Pyle, 191 S.W.2d 708 (Tex. Civ.App., 1945), affirmed 145 Tex. 385, 198 S.W.2d 562 (1946); 13 Tex.Jur.2d, Con-

---

1. "Where there is a breach of the agreement or warranty, accompanied with fraud, the buyer may always return the goods or not, at his pleasure. When there is no fraud, and the warranty goes to the fitness of the article, and it proves wholly unsuitable, or to the identity of the article, and it proves another thing from that for which it was sold, it may be returned upon breach of the agreement or warranty. But if the warranty goes to the degree of fitness or to quality,

and it proves to be of an inferior quality or fitness, the goods cannot be returned, and the remedy is by action for damages, the measure of which is the difference between the value of the article as it is and as it was represented to be. Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but if it only perform them badly the remedy is by action for damages."

tracts, § 160, page 347, wherein it is stated:

"After the goods have been accepted, the buyer may then treat any breach of 'condition' concerning the quality of the goods as a breach of warranty only; he may not reject the goods and consider the contract repudiated."

In this case, the appellee plead failure of consideration as an affirmative defense to the seller's cause of action based upon a written contract, as is required by Rule 94, Texas Rules of Civil Procedure. However, appellee failed to establish either a total failure of consideration or the extent of a partial one, and he did not claim an offset for damages on account of breach of warranty. Under such circumstances, the seller was entitled to recover the entire purchase price because no defense was made out. 51 Tex.Jur.2d, Sales, § 357, pages 99–100; J. B. Colt Co. v. Reeves, 266 S.W. 564 (Tex.Civ.App., 1924, no writ history); Jameson v. Consolidated Oil Co., 284 S.W. 309 (Tex.Civ.App., 1926, no writ history); Allison Ranch Co. v. Angelo Auto Electric, 145 S.W.2d 645 (Tex.Civ. App., 1940, writ dism., w. o. j.)

It thus appears that even if supported by evidence the finding of the jury on special issue number one would avail appellee only if he had relied upon the same in connection with a claim for damages on account of breach of warranty, which he did not do. Such finding was, therefore, immaterial to the defense relied upon by appellee and the trial court should have disregarded the answer in connection with rendition of judgment.

Appellee failed to establish any defense which would authorize rescission of the contract in question and appellant's motion for judgment non obstante veredicto should have been granted. Appellant's point number one is sustained.

There is an additional reason why the finding on special issue number one should have been disregarded. It not only was immaterial in connection with rendition of judgment under the state of the record herein, but the evidence was not sufficient to support the jury answer to same.

The trial court in this case defined the term "new machine" as "a machine in condition as when first manufactured, not worn or defaced by use in any degree." This definition is from the case of Maxwell v. Bastrop Manufacturing Co., 77 Tex. 233, 14 S.W. 35 (1890) where the court was considering the words "new and efficient" as applied to machinery, contained in an act of the legislature, and wherein the court said in part that "Many illustrations of the use of the word 'new' readily suggest themselves." In the case of Mills County v. Brown County, 87 Tex. 475, 29 S.W. 650 (1895), our Supreme Court has also held that the word "new" is a relative term, and, in discussing the subject said:

"* * * As was suggested in the argument, 'new' is a relative term. We have a striking illustration of this fact in the case of the Holy Scriptures. The canonical books which appeared upon the advent of the Christian era, though now nearly 20 centuries old, are known in group as the 'New Testament,' in contradistinction to the former canonical books, which are known together as the 'Old Testament.' "

The definition of "new machine" submitted to the jury in this case was not objected to and may be considered to be correct for the purpose of this case. However, the word "new" may have different meanings, depending upon various factors such as the nature and character of the article involved and the context of the fact situation under consideration. The cases hereinbefore cited are illustrative of this statement along with others which will be briefly noted.

In the case of Baum v. Segal (DC N.J., 1950) 89 F.Supp. 716, the purchaser sued for damages because certain inner tubes ordered by him were not new but were patched or reconditioned. The court found that in the tire and tube business when inner tubes are ordered the buyer normally specified firsts or seconds, which was not done in that instance. Although the testimony showed that the major portion of the tubes delivered to the purchaser had the factory brand erased and some had been patched to cover factory defects, the court, nevertheless, held that the purchaser got new tubes which he had contracted for but not first line and quality.

In the case of Ajax Petroleum Products Company v. Blake, 126 N.E.2d 926 (Court of Appeals of Ohio, 1953) the court considered the meaning of the word "new" in connection with a piece of road building equipment which had been manufactured some four years prior to its sale. The purchaser brought suit for breach of express warranty and damages resulting therefrom on the ground that the machinery was in fact not "new". The defendant-seller, testified that he had engaged in the road equipment business for many years and in such business the term "new" is used to designate that the equipment involved has not been previously used. The trial court adopted this test and rejected the opinion testimony of the president of the corporation-purchaser of said equipment that the word "new" meant newly made or of recent manufacture. The trial judge instructed a verdict and entered judgment for the defendant-seller, based upon a finding that there was no breach of warranty. Such holding was affirmed on appeal. The court quoted from 66 C.J.S., giving a definition of the word "new" and held as follows:

> " 'New. A relative term defined as meaning not yet used or worn; now first used for some purpose; recently made; still unimpaired by use. In its ordinary acceptation, the opposite of the term "old".'

"It will be noted that under this definition the word may have a meaning contended by each of the parties, but when it has a special meaning in a certain business it must be interpreted as ordinarily used in that business. It is a matter of common knowledge that the use test is used in the automobile trade in determining whether or not an automobile is new. In other situations the use test cannot be employed for the reason that use consumes a commodity, for example, food products such as corn, wheat, potatoes, oranges, etc. In such cases the term must mean the opposite of 'old'."

■ We believe that the use test, discussed by the Court of Appeals of Ohio in the case of Ajax Petroleum Products Company v. Blake, supra, is a proper one to be applied in this case. The fact that a cotton picking machine sold in 1962 was manufactured in 1961 would not prevent it from being a new machine so long as it had not been used.

In this case the evidence shows without dispute that the machine in question was manufactured June 16, 1961; that it was shipped to Pharr, Texas, on June 22, 1961; that it was there stored in a designated International Harvester warehouse, after delivery on June 28, 1961; that it remained there until delivered to employees of Mathis Equipment Company, appellant herein, on August 8, 1962; and that the machine had never been sold or used prior to being so delivered. The evidence further established that new cotton picking machines are not sold under designation of a certain year, but, on the other hand, are sold under a specific model number.

In the final analysis, the evidence in this case shows that appellee decided not to pay for said machine because he discovered, more than two months after he accepted the machine and had picked fifty bales of cotton with it, that it had been manufactured in the month of June, 1961.

As we have heretofore pointed out, the trial court in this case defined the term "new machine" as meaning "a machine in condition as when first manufactured, not worn or defaced by use in any degree." The evidence, considered in its most favorable light to appellee, was not sufficient to establish by a preponderance thereof that the machine was not new under such definition. There was no direct testimony to the effect that the machine, at the time of its delivery to appellee, was not in the same condition as it was when first manufactured, nor was there direct testimony that the machine had been used prior to its delivery to appellee. Appellee testified that after several days of operation there was discovered a break in the cam track of the machine which in his opinion, was an "old break". This is claimed by appellee to support an inference that the machine had been used prior to its delivery to him. This evidence amounts to no more than a bare conclusion which does not constitute evidence of probative force to support a finding that the machine had been used. Neither is the remaining testimony, direct or circumstantial, particularly that to the effect that some trouble was experienced with certain parts of the machine within a short period of time after appellee used it to pick cotton, sufficient to support a finding of non-newness.

The fact that the machine herein involved was manufactured fourteen months before the sale to appellee, standing alone or considered with the other testimony in this case, is not sufficient to establish that the machine was not new. This is particularly true in the face of direct testimony establishing the date of manufacture, the place where such machine was stored before being delivered to appellee and positive direct testimony that it had not been used theretofore. The evidence is insufficient to support the answer of the jury in response to special issue number one, and appellant's point number four is sustained.

The record herein reflects that appellee elected to rely upon failure of consideration and rescission instead of a claim for damages based upon breach of warranty. Both appellant and appellee made trial amendments to their pleadings after appellant had rested its direct case and before appellee offered testimony in his defense. Appellee was in the best possible position at that stage of the trial to determine what his defenses would be to the prima facie case which had then been established by appellant; and it is apparent that the election not to seek damages for breach of warranty was deliberately made by appellee.

The evidence herein established appellant's prima facie right of recovery which could have been defeated only if appellee brought his defense within some recognized rule authorizing rescission of the contract or authorizing damages giving rise to a reduction of the amount owing on same. Appellee failed to establish any such defenses and appellant's amended motion for judgment non obstante veredicto should have been granted and judgment entered allowing appellant to recover on the contract of sale.

On oral argument of this case counsel for all parties advised this court that following trial in the lower court the cotton picking machine involved had been sold for the sum of $14,400.00, pursuant to agreement of the parties. The record herein does not reflect such agreement or sale so that we can act upon it in connection with rendition of judgment. However, counsel have assured us that they are in agreement that proper credit will be given in the event judgment is rendered for appellant.

The judgment of the trial court is reversed and here rendered in favor of appellant for recovery of the purchase price of said machine in the amount of $16,400.00, together with interest from October 15, 1962.

NYE, Justice (dissenting).

C. P. Rosson, Jr., appellee, hereinafter called Rosson, ordered a new cotton picking machine from Mathis Equipment Company, hereinafter called Mathis. Mathis brought suit for the purchase price and Rosson defended on the basis that the machine delivered was not a new machine.

Farmer Rosson was a substantial farmer, farming over eight hundred acres of land near Taft, Texas, where he lived. He owned a cotton gin and grain elevator. He had purchased a new cotton picking machine in 1961 from Mathis which proved to be satisfactory. In 1962, Rosson had four hundred bales of cotton that had to be picked from his farms. After the cotton season was under way Rosson decided he needed another new machine so on or about August 3, 1962, he phoned Mathis and ordered a new International Harvester cotton picking machine. On Saturday, August 11th, Mathis delivered the machine. That day, or a day or two later, Rosson signed a "Retail Order for New Farm Equipment" and a "Delivery Report". The "Retail Order for New Farm Equipment" which was the contract in question was never executed by Mathis although the contract stated "this order is subject to the written acceptance of the dealer to which it is addressed * * *." The machine was never paid for by Rosson although the contract called for a cash sale. The written contract began: "I (Rosson) hereby order from you, *subject to all terms, conditions and agreements contained herein * * *.*" One of the terms, conditions or agreements contained in the contract was " * * * After delivery all of the equipment shall be *held and used* at the Purchaser's risk and expense, *but title* with right of repossession for default *is reserved to the Seller until the full purchase price has been paid in cash.*" (Emphasis supplied.)

The machine had a series of breakdowns during the approximate two weeks that Rosson used the machine. At least one was a major breakdown which came three or four days after he received the machine. These breakdowns included a broken cam shaft, overheating of the engine to the point of boiling water, a replaced heat gauge and sending unit, a "knock in the machine", overheating of rear drum caused by a bend bar or alignment and excessive wear on cam rollers and bushing to the extent of steel shavings being present. This last breakdown was so serious that a Mathis mechanic stated that the machine would have to be greased every two hours in order to finish the cotton season or the machine would have to be hauled in and torn apart to find out all the trouble. After Rosson had used the machine under these conditions, and after the mechanic had told him what he would have to do to finish the season, Rosson said that he didn't want to fool with it and he told the Mathis mechanic to take it in. The machine was never used again by Rosson.

Beginning with the first breakdown and continuing for some two months until the latter part of October, 1962, Mathis and Rosson carried on a series of negotiations. Mathis tried to get Rosson to pay for the machine. Rosson kept giving Mathis excuses for not paying. Rosson finally stated he would not accept the machine unless the written warranty covering the entire machine, as contained in the contract, was extended to cover the 1963 cotton season and that the machine should be repainted and polished. Mathis tried to meet the offer but was unable to get International Harvester Company, their manufacturer, to extend the warranty except on a few specific parts. They agreed to paint and polish the machine. Sometime during the negotiations Rosson discovered that the machine was a 1961 model, some fourteen months old and finally refused to accept and pay for the machine unless the written warranty was extended. Negotiations broke down and Mathis picked up the machine and took it back to their place of business.

Mathis then brought suit in the nature of a sworn account, amending their plead-

ing during the course of the trial, alleging that Rosson ordered a certain model cotton picking machine; that he executed such purchase order and agreed to pay $16,400.00 cash for the machine; that Mathis delivered such machine and Rosson accepted it; and that Mathis is therefore entitled to recover the purchase price plus interest. Rosson filed an answer in the nature of a general and sworn denial; plead that he ordered a new machine; that he understood and believed that the machine delivered was a new 1962 model although the same was a 1961 model; that the $16,400.00 purchase price was based on the condition that the machine was a 1962 International Harvester cotton picker; that the contract was never fully consummated; that the law implies a warranty that the machine is fit for the purpose for which it is sold; that the machine was not as it was represented to be by Mathis; that there was a total failure of consideration; and finally praying that Mathis take nothing by its suit.

This case was tried on several theories. There was no objection urged by either side attempting to limit or restrict the various theories of the plaintiff's case or the defenses of Rosson. Only two issues were submitted to the jury. No kindred or other issues were requested by either party and no objections were made of the issues or charge that was submitted to the jury. The record itself discloses the actual theory upon which the law suit was tried, and it is best expressed in the questions and answers elicited by the attorney for appellant Mathis, on cross examination of Rosson: "Q. Is it your position in this law suit, basically, that you ordered a new International Harvester, Diesel Hi Drum 2-Row Cotton Picker, and that you did not receive that which you ordered; namely, such a machine? A. That is correct. Q. But instead, you received something different from what you ordered? A. *I received an old machine. I didn't get a new machine.* Q. All right. And your position, then, before this Jury and this Judge,

is that you got an *old machine?* A. That's correct. Q. And that's why you are taking the position that you should not have to pay for the machine? A. That's right. Q. And if the machine were a new machine, then, you would not take that position? A. That's correct." (Emphasis supplied)

The case was given to the jury to answer two issues: "SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that the machine in question was a new machine at the time of its delivery to defendant?" The jury answered: "No". "By the term 'new machine' is meant a machine in condition as when first manufactured, not worn or defaced by use in any degree." In the second issue the jury found that the machine was not wholly worthless for the purpose of picking cotton.

Mathis filed a motion for judgment non obstante veredicto and a motion for new trial. The trial judge heard all the evidence and argument of counsel, overruled both of Mathis' motions and entered judgment for Rosson that plaintiff take nothing. The trial court found in effect that special issue number one was the controlling issue and that there was sufficient evidence to support the jury's findings. I agree. The judgment is correct based on the theory the case was tried and the evidence received.

Appellant Mathis predicates its appeal on the contention that there is insufficient evidence to support the findings of the jury in respect to special issue number one, or in the alternative, that special issue number one should be disregarded because the evidence conclusively established in the trial together with the finding of the jury in answer to special issue number two, establishes as a matter of law, a completed sale.

I would like to review the sufficiency of the evidence, first. The trial judge heard all the evidence, and observed the witnesses, overruled appellant's motions for new trial and judgment non obstante veredicto. The trial judge defined "new machine" as being " * * * a machine in the

condition it was when *first* manufactured and *not worn or defaced* by use in any degree." (Emphasis supplied) The reviewing court must consider the evidence in its entirety to determine whether the evidence is strong enough factually to support the jury's verdict. It is the province of the jury to determine questions of fact but it is the power of the trial judge and the Court of Civil Appeals to set aside the jury's findings and award a new trial. If the evidence shows conflict upon any material issue the Court of Civil Appeals can sustain the verdict and affirm the judgment; or if in their opinion the verdict was against such a preponderance of the evidence as to justify such action it can set aside and remand a case for new trial. If the Court of Civil Appeals reverses and renders a cause, on the ground that the verdict was unsupported by the evidence, this becomes a law question in which the reviewing court may reverse, on the facts only, when ordinary minds can arrive at no other conclusion from the evidence. See 30 T.L.R. 803. The rule is settled in this state that the reviewing court will not disturb the findings of the jury on conflicting evidence where there is some evidence to support their verdict, unless the verdict is so overwhelmingly against it as to shock the conscience or show clearly that the conclusion was wrong or was the result of passion, prejudice or improper motive. I believe the evidence is sufficient to support the jury's findings, that the machine was not new.

It is undisputed that the machine in question was fourteen months old; that it had been stored in a lean-to shed, open on three sides and exposed to the elements for over a year; and that during that year the machine had never been serviced. The appellant in effect, admits that the machine was not in the condition as when first manufactured, and that it was defaced or worn, by admitting that the machine needed to be repainted, at least partially. The appellee Rosson who was very familiar with cotton picking machines and who had purchased a new machine one year before, testified positively that it was an "old machine" and that it was "not a new machine". This alone would be a conflict in the testimony from which the jury should decide. Under cross examination by Mathis' attorney, Rosson testified: "Q. Now, when that happened did that sort of crystallize in your mind the thought, 'This must be a used machine'? A. Well, the first time that I got the opinion or the idea it might be a used machine was when the boy that I had running the machine came in and asked me if it was a new machine, and I said 'Yes, I guess it is. I bought one from them fellows last year and it was a new one'. And he said, 'Well, I don't know, it doesn't look like a new machine to me'."

Mr. Rosson, testifying about the cam track, which by reasonable deduction should not have had an old break if the machine was new, said: "The Cam track is made out of cast, and the new break was bright and the old break was dull, and it was a new break leading off from the old break. Q. In your opinion, therefore, was the break of this Cam track partially an old break? A. It was."

It was undisputed that Rosson had constant trouble with the machine. It would be logical for the jury to consider: that these breakdowns were unusual for a new machine; that a supposedly new $16,400.00 cotton picking machine had the general appearance of an old or used machine; that the machine had defective or worn parts; and that the machine ran so hot that it boiled water out of the radiator.

Rosson stated that he never had a cotton picker that required lubrication every two hours in order to keep it running. Yet Mathis' mechanic told Rosson that the machine would have to be lubricated such in order to finish the cotton picking season. The printed warranty in the purchase order agreement stated that the obligation of the company under the warranty was limited to a period of "six months after first

used by the original purchaser or 1500 hours of use, whichever occurred first". This makes the age of the machine material, or the warranty would not have been limited to six months' time from when it was first used. If time or age of the machine was not material the warranty would have stated that it was to be extended for a period of 1500 hours of use. In this connection concerning the materiality of the age of the machine, Mr. West, a mechanic all his life and superintendent of the gin and grain elevator, was questioned: "Q. If you leave a piston-type engine, such as the one which operates a cotton picker of that type, sitting up for a period, say, of twelve or fourteen months without any maintenance, do you know what the effects would be on the engine? A. Well, it could freeze up, but the motor was running as far as that's concerned. But I do know it's not good on any kind of an engine to sit it up without running it periodically." West further testified that International Harvester's representative and Murff, General Manager from Mathis, said that they were going to have to take the machine over to the shop and tear into it to find what was wrong with it.

I believe, although there was conflicting testimony concerning the condition of the machine, the jury was warranted in finding that the machine was not in the condition as when first manufactured; that it was defaced or worn by use in some degree. Appellate courts cannot substitute their judgment for that of jury upon disputed fact issues. Heckathorn v. Tate, 355 S.W.2d 845 (Tex.Civ.App.1962). Where jury and trial judge under conflicting evidence, resolve controlling issues of fact in plaintiff's favor, on defendant's appeal findings of the trial and jury are conclusive insofar as facts found affect the case irrespective of whether the Court of Civil Appeals would have decided the issue in the same manner. Texas City Terminal Ry. Co. v. McLemore, 225 S.W.2d 1007 (Tex.Civ.App.1949, wr. ref. n. r. e.) If there is any evidence to support findings

in the verdict they are usually regarded as conclusive on the appellate court, especially where the verdict has been approved by the trial judge. Woodard v. Tatum, 277 S.W.2d 943 (Tex.Civ.App.1955). Whether or not we can say or find that a machine which begins to deteriorate the instant it is finally and completely manufactured, is, as a matter of law, a new machine and is the same as when first manufactured when faced with a direct evidence as set forth herein invades the province of the jury.

The parties without complaint imposed on the jury the duty to find from the preponderance of the evidence whether the machine in question was new or not. Was this issue submitted as a condition of sale, a misrepresentation or a breach of contract? The trial court and the parties must have rightly thought that this issue was material, or it would not have been submitted or objections would have been made. The trial court impliedly found, in support of its judgment, that such issue as found by the jury was the ultimate and controlling issue in this case. Appellant says that we must ignore special issue number one; that the finding of the jury in answer to special issue number two (that the machine was not wholly worthless for the purpose of picking cotton) establishes as a matter of law a completed sale. There was no issue as to the intent of the parties. The machine was never paid for. The purchase order was never signed by Mathis. Negotiations continued after delivery of the machine and there was no issue submitted as to whether or not Rosson accepted the machine after he knew the machine was not new. In fact, the record discloses that after Rosson discovered that the machine was some fourteen months old he rejected it. See Freeman v. Davis, 363 S.W.2d 952 (Tex.Civ.App.1962, wr. ref. n. r. e.). The contract provided for a cash sales price of $16,400.00 and it set out that "if cash payment with order is made by check, cashing or depositing the same shall not be considered as acceptance of this order." The contract provided

further that title is reserved in the seller until the purchase price is paid. Mathis never intended to part company with the title to this machine until it was fully paid for. There was no evidence in the record prior to the rejection of the offer by Rosson that Mathis parted with title to the machine upon its delivery to Rosson. No bill of sale was executed. No certificate of title was delivered and no chattel mortgage or notes were prepared.

A cash sale is one in which the contract calls for payment of the price in cash when the contract is made or the goods are delivered. Until payment is made or waived a contract for cash sale remains executory and title does not pass even though the goods are delivered. Victor Safe & Lock Co. v. Texas State Trust Co., 101 Tex. 94, 104 S.W. 1040 (1907), and Continental Bank & Trust Co. v. Hartman, 129 S.W. 179 (Tex.Civ.App.1910) (See 37A Tex.Jur. § 124, p. 280). In 37A Tex.Jur § 195, Sales, the author says:

"When the contract of sale is that the goods sold shall be paid for with cash, or notes executed by the vendee or a third person, the sale is on condition that the payment be made, and, that until this is done, the title to the goods remain in the vendor, notwithstanding they may have come into possession of the vendee, unless it appears they were delivered to the purchaser with intent to waive the condition of payment. This rule is controlling and is based upon the view that where by their contract, the parties have either expressly or impliedly made payment a condition precedent to the passage of title, delivery is not consummation of the transaction, and that the sale remains executory until the agreed payment is actually made."

As a general rule, title to property does not pass as long as any condition precedent in accordance with the terms of any agreement remains to be performed. Until such act or condition is performed or waived, the property does not pass. 77 C.J.S. Sales § 250; Deahl v. Thomas, 224 S.W.2d 293 (Tex.Civ.App.1949, wr.ref. n. r. e.)

There was no indication that Mathis ever waived the condition as to the payment of the machine in order to pass title. Until this condition be met or waived, there could never be a completed sale.

There was considerable evidence that the sale was never completed by the continued negotiations between the parties after the machine was delivered. The machine broke down three days after delivery and there was a series of breakdowns which continued for two weeks. During this time Mathis was trying to get Rosson to accept the machine. Assuming, without deciding, that a question of fact was raised as to whether or not Rosson accepted the machine or the parties intended to re-negotiate the original contract, and such issues were not submitted to the jury or requested, should it not be regarded that the trial court found in favor of the appellee? Rule 279, Texas Rules of Civil Procedure; Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449 (1959).

The appellant Mathis did not request the trial court to file any written findings on any omitted kindred issues to special issue number two, that the machine was not wholly worthless for the purpose of picking cotton, before the judgment was rendered. If a ground of recovery is wholly ignored or neglected and no issue is submitted or requested thereon, it will be held to have been waived and no recovery can be based thereon. If however, the grounds of defense consist of more than one element and the court submits some of the elements but omits others and there is no objection to the failure to submit them, the party will be placed in the position of having agreed to have waived a jury trial on the unsubmitted elements and it will be presumed that the trial court found on such unsubmitted elements in such manner as to support the judgment. Therefore, all omitted kindred issues should be deemed as

found by the court in such manner as to support the judgment. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79 (1940); Rule 270, T.R.C.P.; 4 Tex.Jur.2d § 810, p. 342; 20 T.L.R. 38; 29 T.L.R. 537 and cases cited therein. Dee v. Parish, supra.

Some of the evidence of the subsequent negotiations was as follows: Mr. Murff, General Manager of Mathis, testified concerning a conversation between the company representative, Mr. Evans (Zone Manager for International Harvester), Mr. Rosson and himself. Mr. Murff: "A. * * * going back to his gin office (Rosson's), we sat down and Mr. Evans wanted me to tell him about what a complete paint job would cost. I told him that it would run about one hundred and eighty dollars on a cotton picker of that nature. Q. Now, Mr. Rosson was present while this— he was present—. A. He was present. Q. Go ahead. A. —and Mr. Rosson says, 'I don't feel like Mathis Equipment Company should have to stand the cost of this paint job; I feel like International Harvester should.' And Mr. Evans said that he would stand a third, at the time, and I said that I would stand another third if Mr. Rosson would stand a third, and we would completely paint the machine if that would make him happy. Q. What was the reaction of Mr. Rosson to that suggestion? A. Mr. Rosson didn't agree with that, sir. He thought that International should stand the whole thing." Cross examination of Mr. Rosson: "Q. * * * Yes, but I forgot to ask you one thing about it. Wasn't it proposed in that conversation that Murff (Mathis) would pay a third of the painting, and that the company (International Harvester) would pay a third, and that they wanted you (Rosson) to pay a third, and you said nothing doing, that you didn't feel that you ought to share any of the expense of its being painted? A. I told them *the only way I would keep the machine at all* was that if they would improve the appearance of it, repair it and give me a warranty on the machine, not specific parts. Q. And was there a conversation like I indicated where—. A. Yes, they wanted me to pay for part of cleaning * * * supposedly a new machine—. Q. And you turned that down? A. I did." (Emphasis supplied)

Cross examination of Mr. Jouffray (Sales Manager of Mathis): "Q. Now, Mr. Jouffray, isn't it a fact that in these numerous conversations and conferences and everything else that you had, that it was Mr. Rosson's attitude that 'I don't want to accept that machine because all of the difficulty I had with it, but if you will get me a direct guarantee from International Harvester on the machine itself, and on its parts, that, then, I will accept the machine'? That was his attitude, wasn't it? A. Actually, I had only one conversation with Mr. Rosson about getting a company representative down to talk to him about the machine. The rest of the conversations were between he and Mr. Murff." Further questioning of Mr. Jouffray concerning certain written letters to Rosson about what the company would do, Mr. Jouffray answered: "These were letters written to substantiate agreements arrived between Mr. Murff and the company representative and Mr. Rosson. Q. All right. In other words, these were letters to substantiate, as you say, *agreements that were arrived at subsequent to the delivery of the machine*; that's correct, is it not? A. After delivery of the machine, yes sir." (Emphasis supplied)

On cross-examination, Mr. R. N. West, superintendent of Rosson's gin and elevator, testified as follows: "Q. Now, tell the jury what you told Mr. Murff (General Manager of Mathis)—your best memory. A. Well, let's see, I told him the guarantee that we got from the company—well, actually from Mathis Equipment Company, the letter was, that it wasn't the guarantee he wanted. He (Rosson) wanted a guarantee on the whole machine for another year, and he wasn't going to take it. That's what I told him."

On cross examination of Mr. Rosson concerning the deal: "Q. Well, isn't it a fact that the deal you had with Murff was cash on delivery? A. All right. If I'd a payed him in cash for it that afternoon, I would be up here suing him instead of y'all suing me. That's the only difference."

Under the general rules covering the right of rescission and cancellation, a buyer may rescind a sales contract that was entered into through a mutual mistake of fact as well as under the theory that he received nothing of value. Edwards v. Trinity & B. V. Ry. Co., 54 Tex.Civ.App., 334, 118 S.W. 572 (1909 Wr. Ref.). Quoting from 37A Tex.Jur. § 310. "In the event that the seller breaches his sales contract by failing or refusing to perform a material part of it, the buyer may consider the transaction at an end and refuse to proceed with performance of his own part. Thus when the seller has delivered goods that do not correspond to the contract specifications in respect of kind, quality, quantity or other material matter, the buyer is under no obligation to accept them; he may reject them in toto and refuse to pay for them. * * *" Thus where a seller delivers a machine that differs materially from the one ordered, and also fails to perform according to the warranty there is both a breach of contract and a breach of warranty. See St. Mary's Oil Engine Co. v. Allen-Morrow Co., 20 S.W.2d 266 (Tex. Civ.App.1929). This could account for the two issues submitted by the court to the jury. A buyer to avail himself of his right of rescission of the sales contract must proceed with due promptness to give notice to the seller that the contract is being rescinded and to return or offer to return to the seller all of the goods that have been received. 37A Tex.Jur. § 312, p. 643. Rosson notified Mathis within two weeks after the machine broke that he did not wish to keep the machine. He rejected the machine in toto within two months after it was delivered. There was no kindred issue submitted as to the promptness of the buyer's duty to give notice to the seller and I would therefore uphold the implied findings of the trial court that such notice was sufficient.

The cases cited by the majority can be distinguished on the facts. In the cases cited in their opinion, title passed, the contract in question was completed, and the cases were decided on the theory of a breach of warranty as to the degree of fitness of the article or quality or agreement to rescind a fully completed sale. In this case Rosson did not receive that which he ordered, namely, a new machine. A new 1962 machine, not worn or defaced, was as material to Farmer Rosson as the type of machine described, or as material as any other aspect of the contract. The jury found that Rosson did not receive such a machine. When a vendor sells an article by a particular description it is a condition precedent to his right of action of the thing which he offers to deliver or has delivered, that it should answer the description. If this condition be not performed, the purchaser is entitled to reject the article, or if he has paid for it, he may recover the price. Markham Warehouse & Elevator Co. v. Plotner & Stoddard, 140 S.W. 356. (Tex.Civ.App.1911). Here plaintiff brought suit to recover the contract price of five thousand pounds of twine amounting to $550. The evidence established that a certain brand of twine was delivered to the defendant by the plaintiff and that it was not of the grade and quality covered by the contract. The twine was received by the defendant under the belief that it was what they had ordered. As soon as it was discovered by the defendant that the twine was not of the grade and quality ordered by them they refused to accept it and notified the plaintiff that they would hold it subject to his orders. The court held that seller had bound itself to deliver a satisfactory type of twine and the delivery of that kind of twine was a condition precedent to the buyer's liability. In the case of Dalton Adding Mach. Sales Co. v. Valley Motor Co., Inc., 299 S.W. 928 (Tex.Civ.App.1927) the court states: "It

is a well-settled rule of the law of sales that a buyer cannot be compelled to accept and pay for something which he has not agreed to buy. * * * If the thing tendered be not what he agreed to buy, he may reject it, even though it is like the thing he bought." In the case of Moore v. Hendricks, 290 S.W.2d 758, (Tex.Civ.App.1956) the court quotes out of 77 C.J.S. Sales § 183, p. 920, as follows: "There must be a substantial compliance with the agreement of the parties as to the quality or condition of the goods sold, and if there is a material departure from the requirement of the contract the buyer is not bound to accept the goods."

I would affirm the trial court.

## ON APPELLEE'S MOTION FOR REHEARING

SHARPE, Justice.

In the original opinion herein we held that the judgment of the trial court should be reversed and here rendered in favor of appellant (Mathis) for recovery of the price of the cotton picking machine purchased by appellee (Rosson) from appellant. We pointed out that appellant's right of recovery under the written contract of sale could not be defeated by appellee herein because he did not establish a defense which authorized rescission; neither did he establish a defense based upon partial failure of consideration which would authorize an award of damages giving rise to a reduction of the amount owing to appellant. In addition to the authorities cited in the

---

1a. Minneapolis-Moline Co. v. Purser, 361 S.W.2d 239 (Tex.Civ.App., 1962, wr. ref. n. r. e.); Hendricks v. Moore, 156 Tex. 570, 297 S.W.2d 811 (1957); Billington v. Vest, 268 S.W.2d 705, (Tex.Civ.App., 1954, n. w. h.).

2. Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989 (1947)—"It is true the conveyance to the City and the lease to GBRA were evidenced by separate instruments, but these instruments were

original opinion, we find that there are others [1a] which support our conclusions and we adhere to our original disposition of the case.

Appellee's motion for rehearing is based upon his original contentions as well as some of the matters contained in the dissenting opinion which are presented herein for the first time. Two of such new matters are: (1) the contention that there was no written acceptance of the contract by Mathis, and (2) the contention that the language of the contract prevented title from passing to the seller in the absence of the cash payment being made. Neither of these matters were relied upon by appellee in the brief or on oral argument of this case.

As to the first of such matters, the evidence established as a matter of law that there was a written acceptance of the contract by Mathis. Two instruments (each consisting of one printed page) were involved, to-wit, an order for the machine and a delivery report. Rosson signed both instruments and Mathis signed the delivery report (which fully described the equipment covered by the order) after the machine had been delivered to Rosson. There was obviously only one transaction, and Mathis, by signing the delivery report, evidenced its written acceptance of the contract resulting from such single transaction.[2] Furthermore, the evidence otherwise conclusively shows acceptance of the contract by Mathis, evidenced by delivering the machine to Rosson, relinquishing control over it, receiving the written order

---

all executed at the same time as the result of a common understanding to consummate one overall transaction, and are therefore to be construed together as one contract." Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 475 (1942)—"It is the settled rule in this State, * * * that written contracts executed in different instruments whereby a single transaction or purpose is consummated are to be taken and construed together as one contract."

signed by Rosson as well as the delivery report signed by him and Mathis, demanding payment, and granting indulgence as to time of payment. Mathis consistently took the position that it was entitled to payment, in accordance with Rosson's admitted promise to pay, culminating in this suit. Aside from the signing of the delivery report, the conduct of Mathis was tantamount to signing of the said order.[3] The reliance of appellee on the contention that there was no proper acceptance of the contract by Mathis, made for the first time in connection with his motion for rehearing, is not well taken.

■ As to the second new matter, hereinabove mentioned (alleged failure of title to pass to the buyer until the cash payment was made), it is apparent that, in law, the contract was a chattel mortgage. Under Art. 5489, Vernon's Ann.Tex.Civ.St., and the Supreme Court cases construing it, a reservation of title as security for the purchase price of a chattel does not keep the title from passing to the buyer but instead results in the creation of a chattel mortgage.[4]

There is no basis for departing from our original disposition of this case on account of appellee's contentions hereinbefore mentioned. There was a proper acceptance of Rosson's order by Mathis and the written contract was completed. The instrument sued on by Mathis created an indebtedness and a chattel mortgage. The title of the machine was in Rosson, and a chattel mortgage lien as security for payment of the purchase price was held by Mathis.

The remainder of this opinion will assume that there was a completed written contract between the parties. Until his motion for rehearing, Rosson did not question the existence or completion of the written contract; he wanted to undo it on the basis of failure of consideration. However, he failed to secure a jury finding which would have authorized recission upon the basis of total failure of consideration, and he neither plead nor proved a cause of action or secured jury findings which would authorize a recovery for partial failure of consideration.

The original opinion did not discuss the nature and elements of recission. It appears now that further discussion in such connection is indicated.

■ Before a buyer can avail himself of the right of recission, (assuming that he has proper grounds for the same), he must proceed to give timely notice to the seller that the contract is being rescinded and either return, or, at least offer to return, the property he has received and the value of any benefit he may have derived from its possession.[5] The rule requiring the buyer desiring to rescind to take such action is based on the view that before a recission can be granted, the parties must be placed in status quo,[6] and on the maxim "He who seeks equity must do equity." The burden of proof is on the

3. Grossmann v. Barney, 359 S.W.2d 475 (Tex.Civ.App.1962, ref. n.r.e.); Martin v. Roberts, 57 Tex. 564, 567–568 (1882).

4. General Motors Acceptance Corp. v. Musick, (Tex.), 379 S.W.2d 297 (1964); Crews v. Harlan, 99 Tex. 93, 87 S.W. 656, 658 (1905); Harling v. Creech, 88 Tex. 300, 31 S.W. 357 (1895); Milburns Manuf'g Co. v. Peak, 89 Tex. 209, 34 S.W. 102, 103 (1896). As stated in the case last cited: "In case of sale, the property in the goods passes to the vendee, and, though the contract expressly provide for the reservation or retention of the title by the vendor until the purchase money be paid, the statute fixes its status as a mortgage; and the relationship between the parties is that of mortgagor and mortgagee."

5. Ford v. Oliphant, 32 S.W. 437 (Tex. Civ.App., 1895, n.w.h.); Hubbs v. Marshall, 175 S.W. 716 (Tex.Civ.App., 1915, n.w.h.); 51 Tex.Jur.2d, Sales, Sec. 333, p. 54.

6. Bowden v. Waggoner, 210 S.W. 605 (Tex.Civ.App., 1919, wr. ref.); 51 Tex. Jur.2d, Sales, Sec. 333, p. 53.

party seeking recission to establish that he is entitled equitably to such relief.[7]

■ In this case Rosson wholly failed to sustain the burden imposed on him by law to entitle him to the remedy of recission. He undisputedly received a substantial benefit from the use of the cotton machine in question.[8] However, he never, at any time, offered to do equity or to place Mathis in status quo. His failure to comply with this essential element of recission, particularly coupled with the jury finding in answer to special issue no. 2, that the machine in question was not wholly worthless for the purpose of picking cotton, is fatal to the granting of equitable relief, and recission should not have been granted to him.[9]

The original opinion and decision were firmly based upon the expressed premise that the answer to special issue no. 1 was immaterial to rendition of judgment even if supported by evidence; and that Mathis was entitled to recover because of facts conclusively established and the answer of the jury to special issue no. 2.

Further discussion in the original opinion of the insufficiency of the evidence to support the answer to special issue no. 2, could have been omitted; but some consideration of it seemed to be indicated in the light of the whole record in this case. If insufficiency of the evidence to support said issue no. 1 had been the only ground for reversal, we would have been required to remand the case for trial rather than render judgment. However, because of its immateriality, special issue no. 1 could be disregarded and judgment then could and should be properly rendered for Mathis on the basis of the remaining finding of the jury on special issue no. 2, and facts conclusively established.

In connection with the insufficiency of the evidence to support the finding on special issue no. 1, the following appears: six witnesses testified in person (Rosson, Jouffray, Sutterfield, Murff, Card and West); one witness (Richie) testified by deposition; and there was a stipulation as to the matter which would be testified to by the witness Pullin. The testimony of-

7. Powell v. Rockow, 127 Tex. 209, 92 S.W. 2d 437 (1936), in which the court, speaking through Judge Hickman, said, "The burden is upon one seeking to have a contract canceled to establish that he is equitably entitled to that relief. Adams v. Hill (Tex.Civ.App.) 149 S.W. 349 (writ refused). The Rockows came into a court asking it to undo their contract. In order to be entitled to that relief, it was not enough that they merely establish fraud, but the burden was upon them to disclose a situation that made it not inequitable to grant it. This principle is well established."

8. Rosson's own testimony established that the machine had picked fifty bales of cotton during the time he used it. Even at thirty cents a pound for an average bale of five hundred pounds, the value of the cotton picked by said machine would be $7,500.00; and at a cost of Thirty Dollars a bale, the picking cost to Rosson would be $1,500.00.

9. Appellee herein has relied upon the decision of the Court of Civil Appeals in

the case of Moore v. Hendricks, 290 S.W. 2d 758. That decision was reversed by the Supreme Court of Texas in Hendricks v. Moore, 156 Tex. 570, 297 S.W. 2d 811 (1957), and the judgment of the trial court (modified to the extent of a credit of $179.50 in favor of the buyer) was affirmed, as so modified. The Supreme Court held that the buyer there was not entitled to a recission but was relegated to an action for damages for partial failure of consideration, citing among other cases, Wright v. Davenport, 44 Tex. 164 (1875), and Allison Ranch Co. v. Angelo Auto Electric, Inc., 145 S.W.2d 645 (Tex.Civ.App., 1940, wr. dism. w.o.j.), which last two cases we relied upon in the original opinion herein. Another recent decision of the Supreme Court of Texas which supports our original disposition of this case is General Motors Acceptance Corporation v. Musick, 379 S.W.2d 297 (decided May 13, 1964). That case cites with approval J. B. Colt Co. v. Reeves, 266 S.W. 564 (Tex.Civ.App., 1924, n.w.h.), which decision we also relied on in our original opinion herein.

fered by Rosson was that of himself and West, and the stipulation as to Pullin. The remaining witnesses and Rosson were called to testify by Mathis.

Neither Rosson, West nor Pullin had ever seen the machine in question prior to August 11, 1962, the date of its delivery to Rosson. The stipulation as to Pullin was that he would testify he was the supervisor of the operation of the said cotton picking machine in August of 1962, and that he saw to it that the machine was greased according to the instructions given him by Mr. Murff (of Mathis). Said stipulation did not refer to the question of newness of the machine. The testimony of the witnesses for Mathis traced the machine in question from the factory to the moment it was delivered to Rosson, and was to the effect that the machine was new, and that it had not been theretofore sold or used. A critical examination of the testimony by Rosson's witnesses in the light of well-settled rules reflects that the same involves only bare conclusions not rising to the dignity of evidence sufficient to support a finding of non-newness.[10] This is particularly true when the "use" test, discussed in our original opinion, is applied.

The theories of recovery and defense relied on by the parties herein are clearly shown. Mathis relied upon the ground that the contract was executed and that title to the machine passed to Rosson, making him liable for the agreed price. Rosson relied upon the defense of failure of consideration because; (1) he received something different from what he ordered in that the machine was not "new", and (2) the machine was wholly worthless for the purpose of picking cotton. The evidence failed to establish the first said ground in favor of Rosson, since it shows that he received a specific machine which was delivered to him and demonstrated and examined by him prior to his written acceptance of it. Under such conditions, its non-newness (assuming such finding to be supported by evidence) would give rise in this case only to a cause of action for damages for breach of warranty (not urged herein), and recission would not be authorized under such ground of defense. The second ground urged by Rosson (that the machine was wholly worthless for the purpose of picking cotton) was found against him by the jury, thus eliminating any possible basis for recission of the contract. The judgment of the trial court granting a recission in favor of Rosson is, therefore, unsupported by any jury finding or facts conclusively established. There is no place here for evidence-supported findings to be supplied by presumption in favor of the recission accomplished by the judgment. The jury finding on special issue no. 2, that the machine was not wholly worthless for the purpose of picking cotton, aborted Rosson's ground of defense based upon total failure of consideration. This issue was complete in itself and nothing remained to be supplied or implied. This is not a case where one or more elements of a ground of defense have been submitted to the jury and other elements have been omitted. There was nothing left to find in connection with special issue no. 2, which could have been found by the trial court or by this court. Neither is there any implied finding that can be supplied by presumption which would support the judgment of the trial court in connection with the answer to special issue no. 1.

We find no merit in the contentions made by appellee in his motion for rehearing and the same is overruled.

10. Dallas Railway and Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377, 380 (1956); Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, 99 (1939).