## DILLARD et al. v. CLUTTER.

### No. 5224.

Court of Civil Appeals of Texas. Amarillo.

Nov. 18, 1940.

Rehearing Denied Dec. 16, 1940.

McWhorter & Howard and W. F. Schenck, all of Lubbock, for appellants.

Vickers & Campbell, of Lubbock, for appellee.

STOKES, Justice.

On November 1, 1938, appellee, B. C. Clutter, sold to the appellants, Tillman R. Dillard, Weldon B. Dillard, and J. J. Dillard, 69 head of dairy cattle, together with a mechanical milker, Frigidaire equipment, bottles, motortruck, and a large number of other articles constituting his complete dairy equipment. As part of the consideration appellants executed three notes, one in the sum of $6,930, one in the sum of $300, and the third note in the sum of $1,390.04. The $300 note was payable January 1, 1939, and the other two notes were payable in monthly installments. To secure the payment of the notes appellants executed three chattel mortgages, one upon the 69 head of dairy cattle purchased from appellee, one upon 13 head of dairy cattle already owned by appellants, and the third upon a Frigidaire, compressor, ice maker, milk pump, with sanitary pipe and fittings, and other articles composing the dairy equipment, all of which they had purchased from appellee as a unit. After paying a number of installments on the installment notes appellants defaulted in the payment of the indebtedness and appellee filed this suit on July 29, 1939, seeking to recover the entire balance due on all of the notes and to foreclose the chattel mortgage liens.

In their answer appellants included a cross-action in which they alleged that when they purchased the dairy cattle and equipment, appellee represented to them

that the cattle were sound and healthy and that they would produce milk which would meet the quality of Grade A as required by the milk and sanitary ordinances of the city of Lubbock near which appellants' dairy was located and in which appellee knew appellants intended to sell milk produced by the dairy cattle being purchased by them. They alleged further that some 80% of the cattle which they purchased from appellee were afflicted with contagious diseases known as mastitis and Bang's disease and that shortly after purchasing the cattle the official grade of appellants' milk products was reduced by the city authorities of the city of Lubbock from Grade A to Grade B on account of the diseases affecting the cattle purchased by them from appellee. They. alleged in this connection that if the cattle purchased from appellee had been sound and healthy cattle as represented by him, they would have produced 600 quarts of milk per day which appellants could and would have sold at the price of 10¢ per quart, or $60 per day, but that, by reason of the diseased condition of the cattle, appellants were able to sell only 300 quarts of such milk per day for which they were enabled to realize only $30 per day, and that they were able to dispose of the balance of the milk only to pasteurizing plants and cheese factories at a nominal sum. Appellants alleged fraud perpetrated upon them by appellee and also that the representations concerning the health of the cattle amounted to a warranty by appellee that the cattle were in the condition in which he represented them to be.

Upon the trial of the case they abandoned and waived their allegations of fraud and sought recovery only upon the warranty, on account of which they sought a rescission of the purchase, tendered the cattle back to appellee and prayed for judgment against him for the amount which they had paid on the notes together with a large amount of damages which they alleged they had sustained by reason of the diseases having been communicated to their own original dairy herd, loss of patronage and other items of damage specified in their pleading.

The case was submitted to a jury upon special issues and the jury found (a) that at the time of the sale some of appellee's cattle were suffering with the diseases of mastitis and Bang's disease, but that appellee was not aware of it; (b) that the 13 head of dairy cattle already owned by appellants were free of the diseases prior to the time they purchased appellee's cattle, and that they became infected with the diseases as a direct result of being placed with the cattle purchased; (c) that the grade of milk produced by appellants was reduced by the authorities of the city of Lubbock from Grade A to Grade B in April, 1939, as a result of the cattle being infected with the diseases mentioned; (d) that appellee represented to appellants at the time of the sale that the cattle which he sold to them were sound and healthy but that appellants were not induced to purchase them by reason of such representations; (e) that appellants inspected the cattle before purchasing them from appellee and relied upon their own skill and knowledge of the cattle business in purchasing the cattle in question, and (f) that appellants had suffered damages in the sum of $1,000 as a direct and proximate result of appellee's cattle being infected with mastitis and Bang's disease.

Based upon the verdict of the jury the court rendered judgment in favor of appellee for the balance due and unpaid on the notes sued upon after deducting from such balance the sum of $1,000 as damages found by the jury to have been sustained by appellants on account of the diseased condition of the cattle purchased by them from appellee. Other than the deduction from the indebtedness of the $1,000 found by the jury to be the amount of damages sustained by appellants, they were denied any relief upon their cross-action.

Appellants duly excepted to the judgment, gave notice of appeal, and have duly perfected their appeal to this court.

A number of assignments of error and propositions are presented in the brief, but in the view we take of the case the controlling question presented for decision relates to whether or not, under the circumstances shown by the evidence and verdict of the jury, appellants had the right, under the law, to tender the cattle back to appellee in full satisfaction of the balance due upon the notes executed by them; recover the money paid on the notes, and recover also the damages alleged to have been sustained by them on account of the diseased condition of the cattle which they purchased from appellee.

As we have stated, appellants abandoned their cause of action for fraud and relied solely upon the alleged warranty. The question of fraud, therefore, passed out of the case. They would not

have been entitled to recover as for fraud, however, even if they had not waived it, because of the finding of the jury to the effect that they were not induced to purchase the cattle by reason of any representations made by appellee; but that they inspected the cattle before purchasing them and relied upon their own skill and knowledge of the cattle business in making the purchase. Lawson-Richards, Inc., v. Blalock Lbr. Co., Tex.Civ.App., 30 S.W.2d 797; Boles v. Aldridge, 107 Tex. 209, 175 S.W. 1052.

The contentions made by appellants are, therefore, reduced to the one question of whether or not they were entitled to the judgment for which they contended by reason of the alleged warranty of the soundness and good health of the cattle. The transaction did not include any agreement of appellee to take back the cattle sold in the event they were not in the condition represented by him or did not in all respects meet the warranty or representation made by him.

■ There is no general rule of law better established in this State than that, in the absence of fraud or an express agreement to take back an article or property sold under a warranty, the vendee cannot return the article and recover back all of the purchase money or that part of it which he has paid. Wright & Clark v. Davenport, 44 Tex. 164; Potter v. Mobley, Tex.Civ.App., 194 S.W. 205; Barnett v. Williams, Tex.Civ.App., 242 S.W. 348; Exchange Bank v. Hensley et al., Tex.Civ.App., 240 S.W. 679; Sessums Motor Co. v. White, Tex.Civ.App., 239 S.W. 329; Fetzer v. Haralson, Tex.Civ.App., 147 S.W. 290; J. B. Colt Co. v. Reeves, Tex.Civ.App., 266 S.W. 564; Jesse French Piano & Organ Co. v. Thomas, 36 Tex.Civ.App. 78, 80 S.W. 1063.

■ The only condition under which a buyer has the right of rescission by reason of the warranty of the seller, in the absence of fraud or an agreement for rescission, is where the article or property purchased proves wholly unsuitable for the use or purpose to which it is known by the seller that the buyer intends to place it, or the identity of the article and it proves to be something other than that which was purchased. In that event it may be returned and the contract of purchase rescinded upon an agreement of warranty. But if the warranty goes to the degree of fitness or to the quality of the article or property purchased and it proves to be inferior in quality, no rescission is allowed and the remedy is only one for damages. Wright & Clark v. Davenport, and other cases, supra.

■ Appellants do not contend in their pleading nor does the evidence show that the cattle purchased by them from appellee were of no value whatever, nor that they did not produce milk of the grade and quality contemplated by them. On the other hand, they allege that the cattle were deficient, by reason of the diseases, to the extent of 80%. The proof showed that, upon examination by the inspector August 28, 1939, 39 head of the cattle were afflicted with the diseases mentioned. They allege that if the cattle had been as represented they would have produced 600 quarts of milk per day which they would have sold at 10¢ per quart, thus realizing a return of $60 per day; but that by reason of the diseased condition of some of the cattle they were able to sell only 300 quarts of milk per day for which they realized only $30, together with an additional nominal sum which they obtained for the balance of the milk, which the record indicates was that portion of it which was contaminated by reason of the diseases with which some of the cattle were afflicted. From this it must be concluded that the cattle did not prove to be wholly unsuitable for the purposes for which appellants purchased them, but that they were inferior in quality and some of them were not sound and healthy as appellee had represented them to be.

Our attention has not been called to any evidence in the record to the effect that the cattle could not have been treated and restored to their normal health, nor that any of them had died, or would inevitably die, from the effects of the diseases with which they were afflicted. Appellants introduced much testimony concerning the damages which they had sustained on account of loss of patronage, reduction in the grade of some of the milk produced by the cattle, sanitary work on the premises made necessary by infection from the presence of the diseased cattle, and the communication of the diseases to some of the dairy cattle originally owned by them. All this was submitted by the court to the jury in special issue No. 18 wherein they were asked: "What sum of money, if paid now, do you find from a preponderance of the evidence will fairly

and justly compensate defendants for the damages, if any, suffered and sustained by them as a direct and proximate result of mastitis, if any, and/or Bang's disease, if any?" To this special issue the jury answered by inserting the sum of $1,000. This amount was allowed appellants by the court in the judgment entered by him upon the verdict, and the special issue was broad enough to cover all of the damages alleged and contended for by appellants. No question is raised as to the correctness of the calculation made by the court on the balance due on the notes and, in our opinion, appellants were accorded all of the relief to which they were entitled under the pleadings and the evidence adduced at the trial.

In our opinion no error is shown by any of the assignments of error presented by appellants, and the judgment of the court below will, therefore, be affirmed.