# A. G. Bedner v. Dunigan Tool & Supply Company

No. A-46.   Decided May 3, 1944.
Rehearing overruled June 21, 1944.
(180 S. W., 2d Series, 919)

*Wm. L. Evans,* of Fort Worth, and *John F. Evans,* of Breckenridge, for petitioner.

It was error for the Court of Civil Appeals to hold, as a matter of law, that the pleadings and evidence of the petitioner (defendant below) presented no defense to the note sued upon, and that, under the pleadings and evidence of the case, the trial court properly gave a peremptory instruction in favor of respondent (plaintiff below) for the full amount sued for: 2 Black on Rescission and Cancellation, par. 700; J. I. Case Threshing Mach. v. Street, 216 S. W. 426; Halff Co. v. Jones, 169 S. W. 906; Terhune v. First Natl. Bank of Ladonia, 24 Texas Civ. App. 242, 60 S. W. 352 (writ of error refused 94 Texas 711).

*Harrell & Bowers,* of Breckenridge, for respondents.

Defendant's pleadings and evidence failed to raise the issue of want of consideration for any part of the note sued on, and the instructed verdict was properly given. Defendant's renewal of his indebtedness on two occasions after learning of the alleged defect in the pump and motor, was a waiver of such defects and amounted to an estoppel of his right to set them up as a defense to a suit for the purchase price. Wright v. Davenport, 44 Texas 164; Chastain v. Gilbert, 145 S. W. (2d) 938; Hunter v. Lanius, 18 S. W. 201; Vick v. Downing, 120 S. W. (2d) 279; Williams v. Owen, 111 S. W. (2d) 1182.

MR. JUDGE TAYLOR of the Commission of Appeals delivered the opinion for the Court.

The controversy out of which this suit arose, as reflected by the original petition of Dunigan Tool & Supply Company, was concerning A. G. Bedner's refusal to pay a balance of about $1,600 on a note signed by him for the original sum of $34,764.67. As reflected by Bedner's verified original answer and the subsequent pleadings of the parties, the controversy in reality concerned his right to recover from the vendor company the full purchase price, plus interest, of a pumping unit alleged to have been guaranteed to be capable of performing the special work for which he purchased it.

Upon conclusion of the evidence introduced by Bedner the Company moved for an instructed verdict upon the grounds, among others, that (1) it appeared from his testimony that the pump would perform *a part of the work* for which it was bought and was therefore not worthless to Bedner, and because (2) it appeared from the evidence that *after Bedner knew of the defects*

in the pumping unit he signed the note sued upon (which included the sum charged for the unit) *and thereafter ratified his indebtedness,* agreeing in writing to pay same. The trial court sustained the motion and rendered judgment in the Company's favor. The Court of Civil Appeals affirmed the judgment primarily upon the ground that the pleadings and evidence did not raise an issue of rescission. It was assumed, however, that the pleadings were sufficient to tender the issue, and upon this assumption the Court held as a matter of law that the evidence did not raise the issue. 176 S. W. (2d) 220. Bedner's application for writ of error was granted under the view that the Court of Civil Appeals erred in holding *as a matter of law* that his pleadings and evidence presented no defense to the amount of the note insofar as it included the purchase price of the pumping unit. We are impelled upon final consideration of the case to affirm the judgments of the court below, but hold in this connection that the pleadings of Bedner, in the absence of an exception thereto, were sufficient to tender the issue of an implied agreement on the Company's part, to rescind.

■ Bedner's pleadings were all verified. In his sworn answer, which admitted the execution of the note and chattel mortgage, he alleged affirmatively that the Company was engaged in the business of selling oil well supplies and that he was engaged in the business of oil well drilling; that it became necessary in connection with his business to use a high pressure pumping unit (pump with motor attached) and that he informed the Company of the nature of his operations and of his need to purchase such unit as would be suitable for the operations described; that "thereupon plaintiff recommended and guaranteed to be suitable and satisfactory for the purposes required a certain 50 h.p. Waukesha motor with * * * Gaso Pump attached thereto which defendant *.* * purchased from the plaintiff upon such * * * guarantee of suitableness." He further alleged that he took the unit out and tried it and "after many efforts * * * the pump proved * * * incapable" of performing the work and "could not be utilized" by him and "was wholly worthless to him;" and that after the pumping suit had been demonstrated to be worthless for the purpose for which it was purchased he "returned said pump and motor attached, to plaintiff * * * and fully informed plaintiff of said facts and demanded that plaintiff give him credit for the purchase price thereof * * * and the plaintiff retained possession of the said pump with engine attached and has ever since exercised dominion thereover."

Accepting Bedner's allegations as true, the machinery was taken back by the seller after it was demonstrated it could not do

the work for which it was sold. Impliedly the Company received it back because obligated to do so under the terms of the sale. In other words it is reasonable to conclude that the Company took the pumping unit back in accordance with an agreement on its part to do so, which, not being expressed, was implied. The pleadings were sufficient, in the absence of an exception thereto of any character, to tender the issue of an implied agreement to rescind.

■ The recognized test of an implied warranty of suitableness for the particular purpose for which purchased is "whether the buyer informed the seller of the circumstances and conditions which necessitated his purchase of a certain general character of article and left it to the seller to select the particular kind suitable * * * for the buyer's use." 90 A. L. R. (Anno.) p. 411, supplementing 59 A. L. R. p. 1180 (Anno.). The rule is recognized in this state that when the article purchased is entirely worthless for the purpose for which it was known to the seller to have been intended, the buyer is entitled to rescind the contract and recover back the purchase money paid, provided "the purchaser as soon as he discovers this fact promptly notifies the seller and tenders back the property." Southern Gas & Gasoline Engine Co. v. Peveto (Civ. App.), 150 S. W. 279; Turner & Clayton, Inc., v. Shackelford (Com. App.), 288 S. W. 815; Blythe v. Speake, 23 Texas 429; Fulwiler v. Lawrence et al (Civ. App.), 7 S. W. (2d) 636; Dillard et al v. Clutter (wr. ref.), 145 S. W. (2d) 632; Norvell-Wilder Hdwe. Co. v. McCamey (wr. dism.) 290 S. W. 772; 55 C. J. p. 261, par. 237; 37 Texas Jur. Sales, sec. 103; Black on Rescission and Cancellation, Vol. 2, par. 700; 46 A. J., Sales, sec. 668.

■ We hold that Bedner's pleadings were sufficient to tender the issue of rescission but find it unnecessary to decide whether the evidence raises the issue of whether he acted in the matter of returning the pump with that promptness necessary to constitute a rescission. We have concluded after a careful consideration of the entire testimony, and particularly that of Bedner himself and his unqualified agreement to extend his indebtedness, that the trial court correctly instructed a verdict in favor of the Company upon the issue of ratification of the alleged settlement.

The pumping unit was bought October 6, 1940. It was carried on open account until on January 3, 1941, when Bedner signed a note which incorporated therein as part of the principal the purchase price of the unit. This occurred after about three months of disputation and transactions concerning the implied guaranty of the pump. Bedner testified that he was expecting all of that time that the Company would fix it. He testified that

every time he met with the Company's manager (Mr. Green) after he bought the pumping unit he asked credit for the full purchase price but that the Company gave him credit for only one-half of the price and interest on that amount. It was undisputed that the Company issued to him a credit memorandum of such amounts ($500 plus interest). On June 30, 1941, a credit memorandum was issued to Bedner as follows:

"We credit your account as follows: One 50 h.p. Waukesha motor * * * Gasso pump mounted on steel skids—$500.00."

Susequently a credit of accumulated interest was added. The foregoing transactions occurred after the pumping unit was returned to the Company on November 20, 1940. On January 3, 1941, about 45 days thereafter, Bedner signed the note sued upon with knowledge at the time that the open account for the pumping unit had been merged into the note. Bedner's bookkeeper, McClintock, testifying for Bedner, when asked what he did with the credit memorandum, said: "I booked it * * * I credited the Dunigan account with $500.00." According to Bedner's testimony the pumping unit was unsatisfactory from the beginning. It is undisputed that it was sold on open account on October 6, 1940. It was used for 45 days (time being deducted for repairs) and was returned to the seller the third time on November 20, 1940. At that time the frame of the unit was broken into two pieces and Bedner knew of its defects and of the Company's failure to fix it. About 45 days later he renewed his obligation to pay, putting it in note form, secured by a chattel mortgage on his property. On August 7, 1941, more than thirty days after the credit memorandum above referred to had been issued, Bedner again renewed his indebtedness and secured an extension thereof by written agreement signed by him, the material provisions of which are as follows:

"Mr. A. G. Bedner
Graham, Texas
Dear Sir:

* * *. Your indebtedness is now past due and in consideration of the payment by you of the sum of One Thousand ($1,000.00) Dollars on this date, and of the further agreements on your part hereinafter set out to be kept and performed by you, we agree to withhold court action to reduce your *indebtedness* to a judgment and foreclose your mortgage * * * for a period of sixty (60) days and as long thereafter as you are making satisfactory reductions of your *indebtedness*, * * * (Italics ours.)

If this is in accordance with your understanding of our agree-

ment, you will please indicate your acceptance thereof at the space indicated below and return a copy hereof to us for our files.

Yours very truly,

DUNIGAN TOOL & SUPPLY COMPANY,

By: E. V. Green.

Accepted

A. G. Bedner."

Bedner testified that at the time he signed this extension agreement the facts were as follows:

"Q: Mr. Bedner, you weren't questioning the amount you owed them at that time, were you?

A: No, I didn't ask them how much I owed.

Q: You knew you owed the note, didn't you?

A: Yes, I knew I owed the money and that's all.

Q: And the note was correct as far as you were concerned?

A: Yes, we always got along on that."

Bedner contends that the extension agreement was foreign to the dispute existing between him and the Company at that time. We cannot agree. It concerned his indebtedness and showed that negotiations as to the amount thereof had terminated in that an unequivocal decision had been reached to reduce the amount thereof to judgment. The agreement clearly advised Bedner of that fact and disclosed that no concession other than an extension of time within which to liquidate the amount of his indebtedness was being granted. His written acceptance of the extension of his indebtedness was unconditional, and without reservation of any character indicating that the amount extended was other than that which the Company claimed on the basis of his previously executed note and mortgage. We hold that viewed in the light of the transactions and negotiations as a whole the acceptance by Bedner of the terms of the extension agreement constituted a ratification of the previous credits as a settlement of the long drawn out controversy. The facts bring the case within the principal of ratification applied in Braxton v. Haney et al (wr. ref.), 82 S. W. (2d) 984.

The judgment of the Court of Civil Appeals affirming that of the trial court, is affirmed.

Opinion adopted by the Supreme Court, May 3, 1944.

Rehearing overruled June 21, 1944.