Issa **E. VILLARREAL** et vir, Appellants,

v.

**BOGGUS MOTOR COMPANY, Appellee.**

No. 635.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 16, 1971.

Rehearing Denied Oct. 7, 1971.

Pena, McDonald & Gutierrez, Laurier B. McDonald, Edinburg, for appellants.

Johnson & Davis, Richard D. Davis, Harlingen, for appellee.

OPINION

NYE, Chief Justice.

This is a suit brought by Issa E. Villarreal and her husband Melvin Villarreal to rescind the sale of an automobile. The trial was to a jury resulting in special issue verdict in favor of the plaintiffs. Boggus Motor Company, Inc. of Harlingen filed a motion for judgment non obstante veredicto and a motion to disregard the special issue findings of the jury. These motions were granted by the trial court. Plaintiffs appeal.

The plaintiffs purchased a 1966 Ford Thunderbird automobile on March 19, 1966, paying $6,084.29 to the defendant motor company. The plaintiffs alleged that defendant, through its salesman, represented to them that the automobile was of top quality. In addition they received from the Ford Motor Company a written guaranty against defects in workmanship, all of which caused the plaintiffs to assume that the automobile was reasonably fit and suitable for its intended purpose of reliable transportation.

Shortly after plaintiffs purchased the automobile, a speed control device which permits a person to drive without keeping his foot on the accelerator, failed to function. It was never repaired. Some three or four months after they had purchased the car, the car stalled and refused to start. They summoned the McAllen Ford agency who picked up the car and repaired it for them. About four months later, in November 1966, the electrical system broke down again. They called the same McAllen Ford agency which picked up the car and fixed it. In September 1967, ten months later, the vehicle's electrical system again caused the car to stall. It was again taken to the McAllen Ford agency and fixed. During this same interval of time, the stereo player stopped working. This was replaced by the defendant company from Mr. Boggus' own car. Later, the horn ring became loose because a screw had fallen out. This was fixed by the defendant. Following this

trouble, the windshield wipers started up without being turned on. The defendant fixed the windshield wipers although the actuating handle was never properly aligned with the other buttons on the control panel. Several months later the speedometer broke down. It was repaired, although it continued to make some noise thereafter. A very few months after the car was purchased, the clock refused to work accurately, and although repairs were attempted by the defendant, it never became a reliable timepiece. Finally, on October 10, 1967 (some eighteen months after the vehicle was purchased), something went wrong again with the electrical system for the fourth time. The plaintiffs were able, however, to drive the car to defendant's place of business in Harlingen. There they left the car, claimed the right to rescind the original transaction and, by their suit, demanded the return of the full purchase price paid by them. The vehicle is still parked on the property of the defendant and has not been driven since 1967. The plaintiffs did not tender or offer to tender the certificate of title to the vehicle, nor did the plaintiffs make any offer to return the value of any benefit that they may have derived from the use of the vehicle.

The plaintiffs' sole point of error is directed to the trial court's granting of the judgment non obstante veredicto. The first issue requested by the appellants was:

*"SPECIAL ISSUE NO. 1* Do you find from a preponderance of the evidence that the automobile in question was entirely worthless for the purpose which it was known to the seller that the buyer intended to place it? Answer 'it was entirely worthless' or 'it was not entirely worthless'

We, the Jury, answer: *'It was entirely worthless'* "

They argue that there was sufficient evidence to justify the jury's findings in favor of plaintiffs.

A judgment entered notwithstanding a jury verdict can only be upheld on appeal, when a directed verdict would have been proper. The trial court cannot disregard any special jury findings unless there is no support in the evidence. As to whether or not the evidence supports the jury's findings the appellate court must determine that there is no evidence of probative value upon which the jury could have made the findings adverse to the appellees. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (Tex.Sup. 1962). In doing this we must consider only the testimony which tends to support the jury's issues and disregard all evidence contrary thereto. Le Master v. Fort Worth Transit Company, 138 Tex. 512, 160 S.W.2d 224 (1942).

It was in Dillard v. Clutter, 145 S.W.2d 632 (Tex.Civ.App.—Amarillo 1940, wr. ref.) that our Texas court said that:

"There is no general rule of law better established in this State than that, in the absence of fraud or an express agreement to take back an article or property sold under a warranty, the vendee cannot return the article and recover back all of the purchase money or that part of it which he has paid. (citing cases).

The only condition under which a buyer has the right of rescission by reason of the warranty of the seller, in the absence of fraud or an agreement for a rescission, is *where the article or property purchased proves wholly unsuitable for the use or purpose to which it is known by the seller that the buyer intends to place it,* or the identity of the article and it proves to be something other than that which was purchased. In that event it may be returned and the contract of purchase rescinded upon an agreement of warranty. \* \* \*" (emphasis supplied).

This law was first laid down in Wright & Clark v. Davenport, 44 Tex. 164 (1875).

The Court in the Davenport case went on to say:

> " * * * But if the warranty goes to the degree of fitness or to quality, and it proves to be of an inferior quality or fitness, the goods cannot be returned, and the remedy is by action for damages, the measure of which is the difference between the value of the article as it is and as it was represented to be * * *."

The Court gave this example. It said:

> " * * * Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but if it only perform them badly the remedy is by action for damages."

These rules have never been deviated from, until the adoption of the Uniform Commercial Code by the State of Texas. Since this particular cause of action arose prior to the adoption of the Uniform Commercial Code, the above-cited pre-code law is applicable here.

The only witnesses that testified during the course of the trial were the plaintiffs. It was undisputed that there was no claim of fraud or misrepresentation nor was there any alternative plea for damages by way of breach of contract. Therefore, since the purchasers elected to attempt to rescind the contract and to recover their purchase price, we are relegated to the law governing a suit for rescission of an original contract. In order for the purchasers to do this they had to prove that the vehicle was wholly unsuitable for the use or purpose to which it was known by the seller that the buyer intended to place it. Considering then the evidence of the plaintiffs, Mr. and Mrs. Villarreal, we quote short excerpts primarily from their brief, which they contend supported the jury's answer, that the car was "entirely worthless".

Mr. Villarreal, plaintiff, stated on cross examination: "Q And you agree that it wasn't wholly worthless as an automobile? A It wasn't worth $6,100.00.

Q I understand. That is your contention. You were—would you say that it was performing its functions but performing them badly on occasion. A Yes. The thing about it is that it had a history for breakdowns and it got to a point to where you couldn't trust going or having her go anywhere without thinking what is going to happen this time." "Q All right. Now, you went on to say that the—there came a time when you didn't trust the automobile; isn't that correct? A Yes, sir, that is true. Q And this, I assume, was because of the occasions that it did stop on you; is that correct? A That is true. Q Nevertheless, on a number of occasions, during this 23,000 miles plus, it did get you and your wife and/or your wife to and from where you were going; is that correct? A Well, it wasn't a complete failure the day we bought it. Q All right. A We obviously had some use from it. Q All right. So that on those occasions where you got some use from it, it was serving its function as an automobile, was it not? A Yes, sir. Q It had some value to you. A (No response) Q It had some value to you? A Yes, sir."

Mrs. Villarreal, plaintiff, stated on cross-examination: "Q Yes. Therefore—well, I take it you were unhappy with the car? Obviously or we wouldn't be in court today. It would probably be too strong for you to say it was entirely worthless to you as an automobile? It was really undependable in your eyes, but it wasn't entirely worthless as an automobile? A Well, we couldn't trust it. Q Well, you got some use out of it? A Sometimes." "Q It wasn't entirely useless to you. A Not entirely but mostly. Q Really, what you are saying is that it was inferior quality. A Yes, in my opinion. Q And—well, it performed its function but it performed it badly; is that correct? A At times. Q All right. A Most of the time."

Mrs. Villarreal further testified as follows: "Q And so you would agree with the statement that it performed its functions but performed them badly at times? A

Yes. Q Your complaint really goes to the quality of the automobile then; doesn't it? A Well, quality and never got fixed when we took it in."

On another occasion Mr. Villarreal, plaintiff, testified: "Q All right. And you also told us that the car had been driven almost 24,000 miles by October when you turned it back over to Boggus; is that correct? A Yes. Q And you also told us that for a period of several months the Thunderbird was the only means of transportation that you and your wife had. A Right. Q And when school started she would take you to the school bus and return home and go to school when she was due at school and she would use it to go home and she would use it to go pick you up when you were through with your coaching duties; is that right? A That is correct. Q Now, without going into the problems of the car, and your mental worries about the car, you will admit that the car was used by you and your wife for the purpose of transportation to and from school, to shopping, during this eighteen or nineteen month period that you had the automobile? A (No response) Q Is that correct? A *It was used for the purpose for what we bought it.*" (Emphasis supplied.)

Throughout the testimony it was evident that the plaintiffs were dissatisfied with the vehicle. They experienced numerous breakdowns and difficulties. However, it was undisputed that the automobile was not entirely worthless. This is evident from the plaintiffs' own testimony. It is evident from the fact that they used the car for their work and pleasure, driving it nearly 24,000 miles, long enough so that they were required to purchase a new set of tires at a cost to them of $200.00. Mr. and Mrs. Villarreal were the only witnesses to testify. The witnesses were unanimous in stating in effect that the vehicle was not wholly worthless but that it performed its functions, only it performed them badly. The appellants having testified to facts which defeat their right to recover, they cannot complain of the rendition of judgment notwithstanding the verdict. They are bound by their testimony and admissions. MacDonald v. Carlisle, 146 Tex. 206, 206 S.W.2d 224 (1947); Markwardt v. Harrell, 430 S.W.2d 1 (Tex.Civ.App.—Eastland 1968, ref. n. r. e.). We hold that the trial court was correct in disregarding the jury's answer to the special issue verdict and awarding judgment to the defendant.

Although the other issues were also answered favorably to the plaintiffs, the plaintiffs have failed to demonstrate to us by the evidence or by briefing the law that they would be entitled to judgment on the remaining issues.

A purchaser may lose his right to rescind a contract where he used the goods after he had knowledge of grounds for rescission.

"* * * The rule is recognized in this state that when the article purchased is entirely worthless for the purpose for which it was known to the seller to have been intended, the buyer is entitled to rescind the contract and recover back the purchase money paid, provided 'the purchaser as soon as he discovers this fact promptly notifies the seller and tenders back the property.' Citing authorities." Bedner v. Dunigan Tool & Supply Co., 142 Tex. 663, 180 S.W.2d 919 (Tex. Sup.1944).

Even where a purchaser had not lost his right to rescind (by reason of use) when he tenders the goods back to the seller, he must include the value of any benefit that he derived from possession of the goods. 51 Tex.Jur.2d, Revised, Part 1, Sec. 345, p. 128 et seq., and cases cited therein. Even though the jury found (in a subsequent special issue) that the use of the vehicle for eighteen months was not an unreasonable length of time before giving notice of rescission, the appellants failed to tender the certificate of title to the vehicle and they did not at any time offer to return the value of any benefits that they obviously received from using the vehicle for the eighteen months and during such

time they drove nearly 24,000 miles. Their demand for the return of the entire purchase price is not consistent with the rules of law involving the rescission of contracts. Hendricks v. Moore, 156 Tex. 570, 297 S.W.2d 811 (Tex.Sup.1957); Minneapolis-Moline Co. v. Purser, 361 S.W.2d 239 (Tex. Civ.App.—Dallas 1962, n. r. e.).

We have carefully reviewed each issue answered by the jury and have reviewed all of the evidence offered during the course of the trial. We find that the trial court was correct in entering judgment for the defendant.

Judgment of the trial court is affirmed.

SHARPE, Justice (concurring).

I concur in the judgment of this Court affirming that of the trial court. In this case the plaintiffs-appellants sued for rescission of their contract for the purchase of an automobile—not for damages. The trial court acted properly in granting defendant's motions for judgment non obstante veredicto and to disregard jury findings and in rendering judgment that plaintiffs take nothing by their suit.

Appellee's primary contention that there was no basis established here for rescission of the contract in question is supported by a number of cases set out in its brief, including two decisions of this Court. See Reynolds Brothers, Inc. v. Dodson, 380 S. W.2d 678 (Tex.Civ.App., Corpus Christi, 1964, n. w. h.) and Mathis Equipment Company v. Rosson, 386 S.W.2d 854 (Tex.Civ. App., Corpus Christi, 1965, wr. ref. n. r. e.). In Reynolds and Mathis we cited and relied upon the cases of Wright & Clark v. Davenport, 44 Tex. 164 (1875); Bedner v. Dunigan Tool & Supply Company, 142 Tex. 663, 180 S.W.2d 919 (1944); and Dillard v. Clutter, 145 S.W.2d 632 (Tex.Civ.App., Amarillo, 1940, wr. ref.) which aptly state the general rules concerning rescission of the sale of personal property prior to adoption of the Uniform Commercial Code. The rules reiterated in Reynolds and Mathis are applicable to the instant case.

The opinion in Reynolds points out the remedies available to a buyer in a case such as this. Since plaintiffs' cause of action for rescission here was not established and there was no alternative plea for recovery of damages, the trial court correctly rendered a take-nothing judgment.