**DAVID McDAVID PONTIAC, INC., Appellant,**

v.

**Frances NIX, Appellee.**

No. 05–83–00787–CV.

Court of Appeals of Texas, Dallas.

Oct. 31, 1984.

Carmen Blankenship, Irving, for appellant.

Robert Charles Lyon, Mesquite, for appellee.

Before SPARLING, VANCE and WHITHAM, JJ.

WHITHAM, Justice.

Appellee, Frances Nix, brought this action under the Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon Supp.1982–1983), against appellant, David McDavid Pontiac, Inc. The action arises out of a sale of an automobile. The jury answered all issues in Nix's favor. Judgment in favor of Nix awarded actual damages and restoration of the consideration paid and trebled both and awarded Nix attorney's fees. The trial court denied injunctive relief against McDavid Pontiac. We conclude that the trial court correctly denied injunctive relief. We conclude that the trial court erred in awarding restoration of the consideration paid. We conclude that Nix is entitled to recover $1,080.60 pursuant to section 17.50(b)(1) of the Act. We conclude that the award of attorney's fees was excessive. Accordingly, we affirm in part, reverse and render in part and suggest remittitur as to the award of attorney's fees.

### Liability

First, we consider McDavid Pontiac's liability under the Act. McDavid Pontiac tells us in its brief that "[s]pecial issues No. 5, No. 7, No. 9, No. 12, No. 17(a & b) and No. 15 were the Special Issues submitted pursuant to § 17.46 and § 17.50a [of the Act]." We agree and treat these issues as the liability issues. McDavid Pontiac contends in numerous points of error that there was no evidence to support the jury's findings to these issues. Therefore, we must determine whether there is any probative evidence to support the jury's findings to any one or more of these issues in order to establish McDavid Pontiac's liability under the Act. Virtually all of the facts in the present case are disputed and confusing. The record, however, contains certain undisputed facts. We focus on those undisputed facts to illustrate a situation in which reasonable minds can draw different inferences or conclusions from undisputed facts, thereby raising issues for the jury.

Nix testified that when she entered McDavid Pontiac's place of business on September 13 she told the salesman that among other things she wanted a "green car." Later that day, Nix agreed in writing to purchase a described automobile from McDavid Pontiac for $10,223.15. The contract detailed certain equipment, options or features of the automobile. That automobile was yellow. On a day in dispute, the parties abandoned purchase and sale of the yellow automobile because Nix wanted

a green automobile. McDavid Pontiac did not have a green automobile identical to the yellow automobile; however, McDavid Pontiac obtained a green automobile from another dealer and delivered it to Nix on September 19. Nix drove the green automobile away from McDavid Pontiac that day and kept it until mid or late October when she returned it to McDavid Pontiac after driving it 1200 miles. The selling price on a September 19 retail installment contract on the green automobile bearing Nix's signature was $10,223.15—the identical selling price of the yellow automobile on the September 13 purchase contract. The green automobile lacked many of the features of, and options and equipment on, the yellow automobile.

Nix contends that under her agreement with McDavid Pontiac, the green automobile was to be identical to the yellow automobile described in the September 13 contract and that she was defrauded because the green automobile delivered to her was not identical to the yellow automobile. McDavid Pontiac concedes that the green automobile was not identical to the yellow automobile. McDavid Pontiac contends, however, that Nix agreed to purchase the green automobile because it is the automobile described in the September 19 retail installment contract. The jury, however, rejected most, if not all, of the evidence upon which McDavid Pontiac grounds its contention because the jury found that Nix did not accept delivery of the green automobile. McDavid does not challenge submission, instruction or finding as to the following special issue number three:

> Do you find from a preponderance of the evidence that FRANCES NIX accepted delivery of the green Pontiac Bonneville, Vehicle Identification Number VIN 2069Y9P258582?

> For purposes of answering this special issue you are instructed that "Acceptance" of goods occurs when the buyer: (1) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them inspite of their non-conformity; or (2) Fails to make an

effective rejection after he has had an opportunity to inspect the goods.

The jury answered "we do not." Since there was no challenge to the jury's finding that Nix did not accept delivery of the green automobile, we must accept that finding.

We now consider two of the liability special issues in light of the undisputed evidence of an identical selling price for both the yellow and green automobiles. Special issue number nine reads:

> Do you find from a preponderance of the evidence that the Defendant David McDavid Pontiac, Inc. represented to Plaintiff that the green 1979 Pontiac Bonneville V.I.N. 2Q69Y9P258582 they were selling to Plaintiff had a characteristic or characteristics which it did not ultimately have?

The jury answered "Yes." It is obvious that special issue number nine was submitted in light of the provisions of sections 17.50(a)(1) and 17.46(b)(5) of the Act (characteristics of the goods). Special issue number twelve reads:

> Do you find from a preponderance of the evidence that Defendant David McDavid Pontiac, Inc., through its officers or employees, made an express warranty on September 13, 1979 to the Plaintiff that they would deliver to Plaintiff a green 1979 Pontiac Bonneville V.I.N. 2Q69X9P187663 equipped with a 350 V-8 engine with a 4-barrel carburetor, GR 78 white sidewalls, a heavy duty battery, certain specified gauges, power reclining seats, tungsten headlamps, vinyl top, air conditioning, fender guards, cruise control, tinted glass, visor mirror, sport mirror, power door locks, stereo 8-track, tilt wheel and wire wheel covers?

The jury answered "yes." It is obvious that special issue number twelve was submitted in light of the provisions of section 17.50(a)(2) of the Act (express warranty). The automobile described in special issue number twelve described the yellow automobile but painted green.

It is undisputed that McDavid Pontiac's selling price for the yellow and green automobiles was the same amount. That facts are undisputed does not always eliminate the right to a fact finding. If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented. *Commercial Standard Insurance Co. v. Davis*, 134 Tex. 487, 137 S.W.2d 1, 2 (1940). Although McDavid Pontiac points to evidence to explain why two admittedly dissimilar automobiles had the identical selling price, we conclude that such evidence raised issues properly for the jury to determine. We conclude that in the present case reasonable minds could draw different inferences or conclusions from undisputed facts. We reach this conclusion because, if the sales prices were identical, the jury could reasonably infer or conclude (1) that the green automobile was represented to have characteristics which it did not ultimately have, *i.e.*, the characteristics of the yellow automobile described in the September 13 sales contract (special issue number nine) and (2) that McDavid Pontiac made an express warranty on September 13 that it would deliver a green automobile equipped as described in the September 13 sales contract (special issue number twelve). Accordingly, we hold that evidence of an identical selling price for both the green and yellow automobiles was sufficient evidence to support submission of special issues numbers nine and twelve and the jury's findings to these issues. It follows, therefore, and we so hold, that Nix established McDavid Pontiac's liability under the Act.

### Monetary Relief

Next, we turn to the relief afforded Nix by the trial court. The jury found actual damages of $360.20. It was undisputed that Nix made a down payment of $2,118.15 on the green automobile. The trial court awarded Nix judgment for both the actual damages of $360.20 and the consideration paid of $2,118.15 and then trebled both. Awarding both actual damages and restoration of the consideration paid are inconsistent remedies. In *Smith v.*

*Kinslow*, 598 S.W.2d 910, 915 (Tex.Civ.App. —Dallas 1980, no writ) we put it this way in a case brought under the Act:

> Since the Act does not define "actual damages" as that term is used in [§ 17.50(b)(1) ], we interpret this expression to mean common-law damages. *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 722 (Tex.Civ.App.—Dallas 1979, no writ).... On the other hand, restoration of the consideration paid, as authorized by [§ 17.50(b)(3) ], is a statutory recognition of the equitable remedy of rescission and restitution, based on the theory that the complaining party may elect to avoid the contract, surrender any benefits received, and recover that he parted with.... Nevertheless, [the two remedies] are mutually exclusive, since one is based on recovery of the benefits under the contract and the other on avoidance of the contract. Consequently, we hold that in a suit for breach of warranty, the complaining party may recover three times his actual damages under subdivision (1) or restoration of the consideration paid under subdivision (3), *but not both.* (emphasis added) (some citations omitted).

We conclude, therefore, that Nix may not recover for both actual damages and the consideration paid. It follows, and we so hold, that the trial court erred in awarding Nix judgment for both actual damages of $360.20 and consideration paid of $2118.15.

### Restoration of the Consideration Paid

In light of various points of error raised by McDavid Pontiac, we must determine whether Nix is entitled to recover under either remedy. First, we consider restoration of the consideration paid. In its fifth point, David McDavid asserts that there was no evidence, or insufficient evidence, to support the remedy of rescission and restoration of the consideration paid because Nix did not at any time offer to return the value of any benefits she received from using the green automobile for approximately one month and driving it 1200 miles. When considering "no evi-

dence" points, we can consider only the evidence and inferences tending to support the jury findings or the judgment awards, as the case may be, and must disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). In reviewing "factually insufficient evidence" points we consider all the evidence, including any evidence contrary to the jury findings. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980).

We conclude that Nix's demand for return of the consideration paid is not consistent with the rules of law involving the rescission of contracts. *Villarreal v. Boggus Motor Co.*, 471 S.W.2d 615, 619–20 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). Those rules are found in *Mathis Equipment Co. v. Rosson*, 386 S.W.2d 854, 869–70 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.):

> Before a buyer can avail himself of the right of recission, (assuming that he has proper grounds for the same), he must proceed to give timely notice to the seller that the contract is being rescinded and either return, or, at least offer to return, the property he has received and the value of any benefit he may have derived from its possession. The rule requiring the buyer desiring to rescind to take such action is based on the view that before a rescission can be granted, the parties must be placed in status quo, and on the maxim "He who seeks equity must do equity." The burden of proof is on the party seeking rescission to establish that he is entitled equitably to such relief.

The record in the present case is silent as to any tender, or offer of tender, by Nix to McDavid Pontiac of the value of the benefits Nix received from using the green automobile for approximately one month and driving it 1200 miles. Restoration of consideration is an equitable remedy rather than one at law. *See Smith*, 598 S.W.2d 915. Consequently, we conclude that Nix failed to meet her burden of proof and must, therefore, be denied the equitable relief of rescission according to the maxim "he who seeks equity must do equity." Accordingly, we conclude that there was no evidence to support the remedy of rescission and restoration of the consideration paid and sustain McDavid Pontiac's fifth point. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza*, 395 S.W.2d at 823. Applying this principle to the present case, we conclude that the trial court erred in awarding Nix judgment for the consideration paid in the amount of $2,118.15. It follows that we must sustain McDavid Pontiac's fifth point and reverse the trial court's judgment insofar as it awards Nix judgment for the consideration paid in the amount of $2,118.15 and render judgment that Nix take nothing as to the amount of consideration paid.

### Actual Damages

Second, we consider McDavid Pontiac's challenges to the award of actual damages of $360.20. In its first point, McDavid Pontiac contends that the damage issue, special issue number eleven, states an incorrect and improper measure of damages. In its second and third points, McDavid Pontiac contends that there was no evidence, or insufficient evidence, to support submission of special issue number eleven or the award of actual damages. Special issue number eleven reads:

> Find from a preponderance of the evidence the difference, if any, between the value of the 1979 Pontiac Bonneville V.I.N. 2Q96Y9P258582 delivered to the Plaintiff and the value of the 1979 Pontiac Bonneville V.I.N. 2Q69X9P187663 as represented by the Defendant.

The jury answered "$360.20." The charge contained the following instruction:

> "MARKET VALUE", "FAIR MARKET VALUE", "CASH MARKET VALUE" and "FAIR CASH MARKET VALUE" are synonymous expressions. They may be defined as the amount of money

that a person desiring to sell, but not bound to do so, could, within a reasonable time procure for such property from a person who desires and is able to buy, but is not bound to purchase the property. It is the amount that could be obtained at private sale and not at a forced or auction sale.

Initially, McDavid Pontiac complains that the issue asks only about the difference between "value." Nix responds that the instruction covers the failure to inquire in terms of the synonymous expression "cash market value." Considering the charge as a whole, we conclude that special issue number eleven may be read as inquiring in terms of the appropriate synonymous expression defined in the instruction. Therefore, we conclude that inquiry as to "value" is not fatal in the present case.

■ McDavid Pontiac, however, further complains of the wording of special issue number eleven and insists that the issue should have been submitted as: "What was the difference, if any, between the cash market value of the car [Nix] contracted for and the cash market value of the car delivered." We find no error in asking the jury to determine the difference in the cash market value between the green automobile delivered to Nix and the yellow automobile as represented by McDavid Pontiac in light of our language in *Smith*, 598 S.W.2d at 912. In *Smith*, we stated the correct measure of damages for breach of warranty in a case brought under the Act to be: "In the case of a sale of personal property the measure of damages is the difference between the cash market value of the article as delivered and what its value would have been if it had been as warranted." Accordingly, we conclude that special issue number eleven did not state an incorrect and improper measure of damages. McDavid Pontiac's first point is overruled.

■ Next, we consider McDavid Pontiac's evidentiary challenges to special issue number eleven. McDavid Pontiac tells us in its brief that "[in] the absence of other proof of market value, the price

agreed upon by the parties to the sale of personal property may be taken as the market value of that for which the parties contracted," citing *Chrysler Corp. v. Schuenemann*, 618 S.W.2d 799 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) and *Smith*. Therefore, there is sufficient evidence of the cash market value of the yellow automobile as represented by McDavid Pontiac—the agreed upon selling price of $10,223.15. With respect to the green automobile delivered to Nix, both the "window sticker" in evidence and testimony establish that the manufacturer's suggested retail price of that automobile was $9,681.95. The price placed on a good by a vendor is at least some evidence of its market value. *Jack Roach Ford v. De Urdanavia*, 659 S.W.2d 725, 729 (Tex.App. —Houston [14th Dist.] 1983, no writ). The difference between $10,223.15 and $9,681.95 is $541.20. The jury reduced that amount to $360.20. To do so was their prerogative. Where there is some evidence of damages, the amount of the award must be left to the sound judgment and discretion of the jury. *Nickel v. Snider*, 484 S.W.2d 940, 943 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). As a general rule, a reviewing court will not interfere with a jury's determination of the amount to award as damages if there is any probative evidence to sustain the award. *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324, 334 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). We hold, therefore, that there was sufficient evidence to support submission of special issue number eleven and the award of actual damages in the amount of $360.20.

■ Under the Act, a finding of actual damages by the trier of fact invokes the further provisions of section 17.50(b)(1) reading "[*i*]*n addition* the court shall award two times that portion of the actual damages that does not exceed $1000." (emphasis ours). Thus, it has been held that section 17.50(b)(1) provides that in addition to actual damages, the trial court shall award twice that portion of the actual damages that does not exceed $1,000.00.

*Garcia v. Rutledge,* 649 S.W.2d 307, 313 (Tex.App.—Amarillo 1982, no writ). Therefore, Nix is entitled to recover $360.20 in actual damages plus an additional award of $720.40 which is "two times that portion of the actual damages that does not exceed $1000." Accordingly, we must render judgment in favor of Nix for $1,080.60.[1]

## Attorney's Fees

Section 17.50(d) provides "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." The jury found that $7,000.00 would be a reasonable attorney's fee for the services of Nix's attorneys. The trial court awarded Nix that amount. McDavid Pontiac contends that there was no evidence, or insufficient evidence, of the reasonableness and necessity of Nix's attorney's fees. Nix's attorney testified to the following hourly rate structure for certain clients as follows:

When we first took on this case back in 1980 we were charging clients who could pay for us to handle this type of work at the rate of $65 an hour.

In 1981 our rates were changed to $75 an hour, and in 1983 my rate was changed to $100 an hour for each and every hour of time that I spent on a case where a client had the ability to pay.

The present case went to trial February 14, 1983. Nix's attorney further testified that he had expended seventy hours on the present case and expressed his opinion "that in this case for the 70 hours of time that had been spent that a fair and usual and reasonable and customary fee for those type of services in Dallas County, Texas, would be $75.00 an hour." McDavid Pontiac's counsel, called as a witness by Nix, testified:

Q  At what rate have you billed your client?

A  I billed my client at $75 an hour at the beginning of the case which started back in 1980. I am now billing at the rate of $85 an hour.

Q  Do you feel that those rates are reasonable and necessary rates and usual and customary rates in Dallas County, Texas, for the same or similar services?

A  I feel that that is a customary charge in Dallas County, Texas, yes, sir.

Seventy hours times seventy-five dollars cannot equal $7,000.00. Seventy hours times eighty-five dollars cannot equal $7,000.00. It is obvious, however, that the jury seized upon Nix's attorney's testimony that "in 1983 my rate was changed to $100 an hour for each and every hour of time that I spent on a case where a client had the ability to pay," multiplied that hourly rate by seventy and arrived at a finding of $7,000.00. We conclude, however, that testimony as to a rate of $100.00 per hour in existence only weeks before trial for an attorney's clients having "the ability to pay" does not constitute any probative evidence to support the jury's finding in the present case. Implicit, however, in the testimony of both counsel is that seventy-five dollars an hour (at least) would be a reasonable hourly rate in the present case. Consequently, we conclude that the testimony of both counsel would be sufficient to support an award of $5,250.00, or seventy-five dollars an hour times seventy hours. *Chrysler Corp. v. Schuenemann,* 618 S.W.2d at 807 (Testimony on hours spent and hourly charge considered reasonably sufficient to support attorney fee award under the Act). Moreover, TEX.R.CIV.P. 440 vests a court of appeals with the authority to suggest a remittitur "if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only." A court of appeals may exercise its power to suggest a remittitur when the appellant complains that there is insufficient evidence to support an award and the court of appeals agrees, but finds that there is sufficient evidence to support a lesser award. *See Baker Marine Corp.*

---

1. Since actual damages in the present case are less than the $1,000 ceiling in section 17.-50(b)(1), we do not reach the new car dealer inflation factor calculations required by TEX. REV.CIV.STAT.ANN. art. 4413(36), § 6.06(b) (Vernon Supp.1984).

*v. Moseley*, 645 S.W.2d 486, 490–91 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.). We conclude that in the present case there is sufficient evidence to support a lesser award than $7,000.00, to wit, $5,250.00. Accordingly, we condition our affirmance of the attorney's fee award in this case on appellee's filing a remittitur in the amount of $1,750.00, plus any applicable interest.

### Injunctive Relief

By crosspoint, Nix contends that the trial court abused its discretion in refusing to permanently enjoin McDavid Pontiac from:

1. having customers sign retail installment agreements in blank;

2. representing to customers that retail installment agreements confer or involve rights, remedies or obligations which they do not have or involve;

3. representing to customers that they will deliver an automobile of a particular standard, quality or color or which has certain characteristics or uses which these automobiles do not have; and

4. knowingly making false or misleading statements of fact concerning the standard, quality, color, use, characteristics or equipment an automobile has when it does not have same.

Section 17.50(b)(2) provides "[i]n a suit filed under this section, each consumer who prevails may obtain ... an order enjoining such acts or failure to act." In *Smith*, 598 S.W.2d at 915 we noted:

We recognize that since § 17.50(b) is not phrased in the disjunctive, the remedies enumerated in its four subdivisions are not expressly made mutually exclusive. Thus, treble damages under subdivision (1) *may not preclude an injunction under subdivision (2)* restraining future deceptive trade practices. (emphasis added).

Section 17.50(b), however, speaks of injunctive relief a prevailing consumer *may* obtain; not *shall* obtain. Thus, the trial court had discretion to grant or deny injunctive relief. Nix argues that, since the jury verdict was in her favor and McDavid Pontiac's conduct grossly negligent and malicious, the trial court abused its discretion in denying the injunctive relief sought. Historically, injunctive relief is designed to deter, not to punish. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62, 95 S.Ct. 2069, 2078, 45 L.Ed.2d 12 (1975). We conclude that the relief sought is designed to punish McDavid Pontiac for the manner in which it dealt with Nix. Moreover, we conclude that absent a showing that the acts sought to be enjoined were occurring as to other consumers or that McDavid Pontiac intended to do those acts in the future, a permanent injunction forbidding future acts would be improper. Injunctions are issued only to prevent imminent harm. *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir.1975), *cert. denied*, 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975); *Lloyd v. Alaska Worldwide, Inc.*, 550 S.W.2d 343, 348 (Tex.Civ.App.—Dallas 1977, no writ); *Wooten v. Clark*, 276 S.W.2d 391, 394 (Tex.Civ.App.—Austin 1955, no writ). We conclude, therefore, that the trial court correctly denied the permanent injunctive relief sought by Nix. It follows, and we so hold, that the trial court did not abuse its discretion in denying the injunctive relief sought by Nix.

In view of our disposition of this appeal, we consider it unnecessary to address McDavid Pontiac's other points of error. We affirm the trial court's judgment insofar as it denies Nix the permanent injunctive relief sought. We reverse the trial court's judgment insofar as it awards Nix the sum of $6,435.05. We render judgment in favor of Nix and against David McDavid in the amount of $1,080.60 plus interest thereon at the rate of nine (9%) percent per annum from May 2, 1983, the date the trial court rendered its judgment. With respect to attorney's fees, the trial court's judgment will be reformed and affirmed if within twenty days from the date of this opinion Nix files a remittitur of $1,750.00, plus any applicable interest. If this remittitur is not filed timely, the trial court's judgment for attorney's fees will be reversed,

and the issue of attorney's fees will be severed from the remainder of the case and remanded to the trial court for trial. All costs in this court and in the trial court are taxed against McDavid Pontiac.

### ON FAILURE TO FILE REMITTITUR

*Nix did not file our suggested remittitur. Accordingly, that portion of the judgment awarding Nix attorney's fees is reversed, and the issue of attorney's fees is severed from the remainder of the case and remanded for retrial.* All costs in this court and in the trial court before this appeal are taxed against McDavid Pontiac.